# Exhibit C

(b)(6): (b)(7)(C)

From:
Sent: Friday, July 24, 2020 5:17 PM
To: Colon, Ricardo; (b)(6); (b)(7)(C)
Subject: Fwd: USUN APD (b)(7)(E) - SA Jabari-Jason Tyson-Phipps, July 24, 2020

Fysa. Tyson-Phipps at it again. Now he is chatting up the UPOs at the USUN and they reported this to RSO and (b) that they are uncomfortable about the info is has shared. Each day seems to be getting worse. We are beyond counseling at this point. Hopefully the call with HRDG is useful.

(b)(6);

(b)(6);
Dignitary Protection Division
DS/P/DP
Supervisory Special Agent
Desk (b)(6); (b)(7)(C)
Cell (b)(6); (b)(7)(C)

From: (b)(6); (b)(7)(C)
Sent: Friday, July 24, 2020 5:01:57 PM
To: (b)(6); (b)(7)(C)
Cc:
Subject: USUN APD (b)(7)(E) - SA Jabari-Jason Tyson-Phipps, July 24, 2020
Sir,
Good afternoon.
On Friday, July 24, at approximately 1500 hours, I came to the USUN from NYFO to check on the detail. SA (b)(6) (b)(6); Acting AIC for the day, informed me that he spoke with USUN DS Uniformed Protection Officer (UPO) (b)(6); (b)(6); (b)(7)(C) UPO (b)(6); expressed concerns over one of the agents on the USUN APD. I telephoned UPO (b)(6); and learned the following.
On Friday, July 24, at approximately 1400 hours, UPO (b)(6); was assigned to Post Three at the USUN, which was the main entrance to the building on First Avenue. UPO (b)(6); stated that while he was on post, USUN APD SA Jason-Jabari Tyson-Phipps approached him, did not introduce himself, and started speaking. UPO (b)(6); stated that he had never spoken with SA Tyson-Phipps before this.
UPO (b)(6); stated that SA Tyson-Phipps was complaining how he was forced to work PRS and he did not want to do protection or ride the bicycle (meaning with (b)(7)(E) on her daily runs). SA Tyson-Phipps told him that he should be doing investigations because he is a lawyer and could be making more money.
UPO (b)(6); stated that SA Tyson-Phipps explained that while in training in West Virginia he was not allowed to use the bathroom because of his skin color and that he was spoken down to by being called "boy" and "you can't do this boy."
UPO (b)(6); stated that SA Tyson-Phipps discussed the SA Tyler King incident (UPO (b)(6); knew SA King). Tyson-Phipps explained that he filed a complaint with the Department regarding SA King being treated unfairly. SA Tyson-Phipps stated that he was also being treated unfairly because of his skin color.
UPO (b)(6); stated that SA Tyson-Phipps explained an incident where he had an extra weapon on his ankle in a command post because there was no safe in his hotel room and that he was instructed to remove the weapon. SA Tyson-Phipps stated that (b)( (referring to AIC (b)(6); picked on him because he carried a pocket whip and it was not an authorized DOS weapon.

UPO [b)(6):____] stated that SA Tyson-Phipps explained the Department gave him a mental health evaluation and asked if he would hurt himself or anyone else. SA Tyson-Phipps said "it was a bunch of crap" and the psychologist told him "no you are fine."

UPO [b)(6):____] stated that at one point SA [b)(6):____] came downstairs to the USUN lobby to exit the building. At that point SA Tyson-Phipps stated in a serious tone "watch out for that guy, he's a fucking kiss ass, that's the only reason why he is still here on the detail."

UPO [b)(6):____] stated that he felt uncomfortable and excused himself to relieve another UPO at a different post. UPO [b)(6):____] stated that he reported this to SA [b)(6):____] because he did not want anything bad to happen to anyone, especially when Tyson-Phipps started speaking about mental health and how SA King committed suicide.

If needed we can provide clarification and additional details to any of the above, but wanted to get this to you. USUN RSO [b)(6); (b)(7)(C)____] was informed, since a UPO was involved. Any additional information received shall be submitted.

Respectfully,

[b)(][b)(6)]

U.S. Department of State
Diplomatic Security Service

SENSITIVE BUT UNCLASSIFIED



(b)(6); (b)(7)(C)

**From:** (b)(6); (b)(7)(C)
**Sent:** Wednesday, July 22, 2020 3:43 PM
**To:** Colon, Ricardo; (b)(6); (b)(7)(C)
**Cc:** (b)(6); (b)(7)(C)
**Subject:** FW: USUN APD (b)(7)(E) - SA Jabari-Jason Tyson-Phipps, July 22, 2020
**Attachments:** In re our call yesterday; APD Situation  (IT)

Good afternoon Rick and (b)

I was hoping that JJ Tyson-Phipps would have been able to improve his performance as a result of the last counselling session. Unfortunately, his performance issues have not improved and I am now afraid that his demeanor has created a hostile work environment effecting the morale and potentially the safety of those around him.

(b)( and (b)(6) have documented several issues that they have counseled JJ on the past couple days. See below. Several agents have provided unsolicited information related to his actions as well as information that shows the potential indicators of a possible threat in the work place.

At this point (b)( and (b)(6) have exhausted all of their resources to effectively manage this situation. Some of the agents have expressed concern that it is not a matter of if, but when he may do something drastic that will negatively impact the detail and the Department. We have a great team of agents on the detail and morale was high, but given the current circumstances the situation has become untenable.

Attached is an email from JJ with a rebuttal to his counseling session. SA (b)(6); has also provided unsolicited information related to his observations and the potential warning signs.

Please let me know if there is anything else we can do to remedy the situation.

(b)(6);

SENSITIVE BUT UNCLASSIFIED

**From:** (b)(6); (b)(7)(C)
**Sent:** Wednesday, July 22, 2020 2:53 PM
**To:** (b)(6); (b)(7)(C)
**Cc:**
**Subject:** USUN APD (b)(7)(E) - SA Jabari-Jason Tyson-Phipps, July 22, 2020

Notes from USUN APD SA (b)(6); and SA (b)(6);

Sir,

Good afternoon. On Tuesday, July 21, 2020, from 1415 to 1443 hours, SA (b)(6); and I spoke via telephone with SA Tyson-Phipps to address a few issues that were recently brought to our attention. SA (b)(6); and I were at the USUN and SA Tyson-Phipps was on ADMIN. Below is a summary of what was discussed:

-On Wednesday, July 15, SA (b)(6); was the AIC and SA Tyson-Phipps was the Lead Advance. While in our office space at the USUN, SA Tyson-Phipps stated, "I got my tactical whip." SA (b)(6) saw the object and described it as a striking

1

Page 49

weapon with a 3.25' steel cable attached to it. SA (b)(6) explained to SA Tyson-Phipps that he cannot carry the weapon while on duty.

SA Tyson-Phipps explained to SAs (b)(6) and (b)(6) that he purchased a "tactical whip" that arrived in the mail earlier that day. He did not want to leave it in his USG vehicle, so he brought it in a bag into the USUN APD office space. SA Tyson-Phipps stated that the "tactical whip" was an alternative to a baton, but did not carry it on his person while on duty. SA Tyson-Phipps explained that he knows he is only to carry DS authorized equipment while on duty.

-On Sunday, July 19, SA (b)(6) (b)(6) was the AIC and SA Tyson-Phipps was the Advance. When SA (b)(6) arrived at the CMR he observed SA Tyson-Phipps with his duty weapon and badge plainly displayed on his belt, entirely unconcealed by his shirt. Also, SA (b)(6) stated that SA Tyson-Phipps has difficulty concealing his gear due to wearing tight-fitting clothing. SA (b)(6) sent SA Tyson-Phipps a text message saying his equipment needs to be concealed.

SA Tyson-Phipps explained to SAs (b)(6): and (b)(6) that he is aware that his equipment needs to be concealed while working and that appropriate clothing should be worn to do so. SA Tyson-Phipps did not acknowledge or admit that his equipment was exposed on this particular occasion or that his choice of clothing was inappropriate, instead rolling into a grievance that this was another example of SA (b)(6) unfairly targeting him. SA (b)(6) complimented SA Tyson-Phipps's stylish clothing, but explained what was needed to conceal equipment and offered to lend him appropriate shirts. This led to a tangent in which SA Tyson-Phipps spoke boastfully about the square footage of his walk in closet. SA Tyson-Phipps stated that, "as a black person I don't want my equipment showing because I don't want to get shot by the police."

-On Sunday, July 19, SA (b)(6) (b)(6) was the AIC and SA Tyson-Phipps was the Advance. While walking from Central Park to the CMR with (b)(7)(E) SA Tyson-Phipps did not respond to radio traffic and was not at the CMR for their arrival. SA Tyson-Phipps stated that he did not receive any radio traffic. SA (b)(6) stated there was a group text for the detail that stated that (b)(7)(E) had begun walking back to the residence from her morning run, as she usually does. SA Tyson-Phipps texted the group and inquired if they were returning to the CMR, which SA (b)(6): (USUN APD Lead Advance for that day) replied that they were. This text would serve to provide an approximate timeline of when (b)(7)(E) would arrive at the CMR.

SA Tyson-Phipps explained to SAs (b)(6): and (b)(6) that he missed the arrival at the CMR because he did not receive any radio traffic. SA Tyson-Phipps stated that he was waiting in the lobby of the USUN (approximately one block away) and speaking with a DS Uniformed Protection Officer, who also did not hear any radio traffic either. He stated that he sent a group text message to the detail inquiring if they were returning to the CMR from Central Park and received an affirmative reply. When asked why he did not report to the CMR to work the arrival advance, SA Tyson-Phipps stated it was because he did not hear any radio traffic from the AIC. SA Tyson-Phipps placed blame for his missing the move entirely on SA (b)(6) broadcasting his radio traffic on talk around channel (C) versus the repeater channel (A), hence SA Tyson-Phipps inability to hear the radio callouts. When it was pointed out by SA (b)(6) and SA (b)(6): that the text message traffic alone should have provided him sufficient notice to reposition to the CMR, he rejected that and again stated that it was entirely SA (b)(6): fault for not ensuring that his radio calls were received, focusing very intently on the talk around versus repeater issue.

SA Tyson-Phipps sounded highly upset and intensely angry with SA (b)(6) who in his opinion reported the information above to SA (b)(6) and SA (b)(6): and has generally targeted him for unfair treatment. At one point SA Tyson-Phipps stated, "I can't fucking work like this" and "I'm getting close to the line." The intensity of his tone and the language he was using, focused on a particular team member, was highly concerning to both SA (b)(6) and (b)(6): SAs (b)(6): and (b)(6) explained the importance of informing them of any issues SA Tyson-Phipps was having with any members on the detail. SA (b)(6) explained how to manage-up with the AIC and acting AICs on a particular day and expressed our willingness to discuss any issues he was having with other members of the team.



On Wednesday, July 22, at 0831 hours, SA Tyson-Phipps sent an email to SAs [b)(6):] and [b)(6)] stating that he was being bullied and harassed. We have not had a chance to reply to this yet, but it is attached above. SAs [b)(6):] and [b)(6)] know of no signs or instances of bullying and harassment on the USUN APD and if so they would not be tolerated and address appropriately.

On Wednesday, July 22, 2020, at approximately 0830 hours, SA Tyson-Phipps texted SA [b)(6)] and asked for a telephone call. On the same date, at from 0910-0949 hours, SA [b)(6)] spoke via telephone with SA Tyson-Phipps. SA Tyson-Phipps was at the USUN and SA [b)(6)] was at NYFO.

SA Tyson-Phipps went on a lengthy rant concerning the above and explained that nothing was his fault. SA [b)(6)] explained that we were addressing issues and moving forward by learning from mistakes. SA [b)(6)] explained different forms of communication if radio transmissions were unavailable. SA [b)(6)] again explained the use of only DS authorized equipment while working. SA Tyson-Phipps stated that he was working in another office on our floor at the USUN because, as he stated, "I have to be careful with everything I say." SA [b)(6)] explained to SA Tyson-Phipps that we were all one team and everyone should be working in our assigned office space. SA [b)(6)] explained that any bullying and harassment shall not be tolerated on the APD and that any instances of this needed to be brought to his attention 24/7.

On Wednesday, July 22, at 1026 hours, SAs [b)(6):] and [b)(6)] received an email from SA [b)(6): b)(6):] (USUN APD and AIC on this day). This email was a follow-up to a conversation that SA [b)(6)] had with SA [b)(6):] The email, attached above, refers to a recently published DHS flier concerning the warning signs of a potential active shooter. SA [b)(6):] laid out how the events of the last 24 hours have seen substantial and concerning changes in SA Tyson-Phipps' behavior very much in line with the specific warning signs listed in the flier, and SA [b)(6):] stated that he believes based on available information that a major incident involving SA Tyson-Phipps has become a matter of if, rather than when.

On Wednesday, July 22, at approximately 1201 hours, SA [b)(6)] spoke via telephone with SA Tyson-Phipps. SA [b)(6)] explained to SA Tyson-Phipps that since he appeared to be upset yesterday afternoon and this morning he should take ADMIN for the rest of the day and work from home. SA Tyson-Phipps was appreciative and agreed to do so. The detail had limited moves for the remainder of the day and had appropriate coverage, but additional personnel could be brought in if needed/requested.

Any additional information obtained shall be submitted.

Respectfully,

[b)( [b)(6)]
U.S. Department of State
Diplomatic Security Service

SENSITIVE BUT UNCLASSIFIED



3

13

Order.  The Department further objects to this interrogatory on the basis that it seeks information that is neither relevant and material nor reasonably calculated to lead to the discovery of relevant and material information.

Subject to and without waiver of the foregoing and the General Objections above, and with the understanding that this interrogatory seeks the same information as Request No. 13 contained in Grieivant's initial discovery requests, the Department refers Grievant to DS 1974 forms, which contain the information he seeks.

**Interrogatory No. 6:**  Please provide the names of the people related to the email which stated "Tyson-Phipps is at it again" dated 24 July 2020 at 1717 subject "Fwd: USUN APD (redacted) SA Jabari-Jason Tyson-Phipps July 24, 2020" (Sic) including the sender and all persons that email was sent to.

Department Response:  The Department objects to this interrogatory as it fails to comply with the Foreign Service Grievance Board's April 29, 2022 Order, which required Grievant to resubmit his discovery requests without adding any new request.  This interrogatory constitutes a new request in violation of the Board's Order.  The Department further objects to this interrogatory on the basis that it seeks information that is neither relevant and material nor reasonably calculated to lead to the discovery of relevant and material information.

Subject to and without waiver of the foregoing and the General Objections above, and with the understanding that this request seeks the same information as Request No. 14 contained in Grieivant's initial discovery requests, the Department states it could not locate any information responsive to this interrogatory, including the email referenced in Grievant's interrogatory.

**Interrogatory No. 7:**  Please explain why the Complainant discussing prior protected disclosures were relevant to the current actions that were being proposed and what him being "back at it again" had to do with anything.  Why is that not proof that his prior actions and protected disclosures were grounds for or a factor in the actions taken against him later.

Department Response:  The Department objects to this interrogatory as it fails to comply with the Foreign Service Grievance Board's April 29, 2022 Order, which required Grievant to resubmit his discovery requests without adding any new request.  This interrogatory constitutes a new request in violation of the Board's Order.   The Department further objects to this interrogatory on the basis that it seeks information that is neither relevant and material nor reasonably calculated to lead to the discovery of relevant and material information.  The Department further

SENSITIVE BUT UNCLASSIFIED

# EXHIBIT H

**Todman, Stanley I**

| | |
|---|---|
| **From:** | Jacob, Jeff J |
| **Sent:** | Friday, July 24, 2020 5:02 PM |
| **To:** | Lynn, Bradley R |
| **Cc:** | Danaher, Evan P |
| **Subject:** | USUN APD (Cardinal) - SA Jabari-Jason Tyson-Phipps, July 24, 2020 |

Sir,

Good afternoon.

On Friday, July 24, at approximately 1500 hours, I came to the USUN from NYFO to check on the detail. SA Mark Romanowski, Acting AIC for the day, informed me that he spoke with USUN DS Uniformed Protection Officer (UPO) Tom Anthony Sarmiento. UPO Sarmiento expressed concerns over one of the agents on the USUN APD. I telephoned UPO Sarmiento and learned the following.

On Friday, July 24, at approximately 1400 hours, UPO Sarmiento was assigned to Post Three at the USUN, which was the main entrance to the building on First Avenue. UPO Sarmiento stated that while he was on post, USUN APD SA Jason-Jabari Tyson-Phipps approached him, did not introduce himself, and started speaking. UPO Sarmiento stated that he had never spoken with SA Tyson-Phipps before this.

UPO Sarmiento stated that SA Tyson-Phipps was complaining how he was forced to work PRS and he did not want to do protection or ride the bicycle (meaning with Cardinal on her daily runs). SA Tyson-Phipps told him that he should be doing investigations because he is a lawyer and could be making more money.

UPO Sarmiento stated that SA Tyson-Phipps explained that while in training in West Virginia he was not allowed to use the bathroom because of his skin color and that he was spoken down to by being called "boy" and "you can't do this boy."

UPO Sarmiento stated that SA Tyson-Phipps discussed the SA Tyler King incident (UPO Sarmiento knew SA King). Tyson-Phipps explained that he filed a complaint with the Department regarding SA King being treated unfairly. SA Tyson-Phipps stated that he was also being treated unfairly because of his skin color.

UPO Sarmiento stated that SA Tyson-Phipps explained an incident where he had an extra weapon on his ankle in a command post because there was no safe in his hotel room and that he was instructed to remove the weapon. SA Tyson-Phipps stated that Jeff (referring to AIC Jacob) picked on him because he carried a pocket whip and it was not an authorized DOS weapon.

UPO Sarmiento stated that SA Tyson-Phipps explained the Department gave him a mental health evaluation and asked if he would hurt himself or anyone else. SA Tyson-Phipps said "it was a bunch of crap" and the psychologist told him "no you are fine."

UPO Sarmiento stated that at one point SA Romanowski came downstairs to the USUN lobby to exit the building. At that point SA Tyson-Phipps stated in a serious tone "watch out for that guy, he's a fucking kiss ass, that's the only reason why he is still here on the detail."

UPO Sarmiento stated that he felt uncomfortable and excused himself to relieve another UPO at a different post. UPO Sarmiento stated that he reported this to SA Romanowski because he did not want anything bad to happen to anyone, especially when Tyson-Phipps started speaking about mental health and how SA King committed suicide.

1

If needed we can provide clarification and additional details to any of the above, but wanted to get this to you. USUN RSO Nathan Al-Khazraji was informed, since a UPO was involved. Any additional information received shall be submitted.

Respectfully,

Jeff Jacob
U.S. Department of State
Diplomatic Security Service

SENSITIVE BUT UNCLASSIFIED