# Exhibit F



U. S. Department of State

# PROFESSIONAL DEVELOPMENT FORM
## For All Foreign Service Employees

| **Name of Employee** *(Last, First, MI.)* | **Post or Office/Position Title** |
|---|---|
| TYSON-PHIPPS, JABARI-JASON | 172684 - DS/FLD/NYFO<br>SPECIAL AGENT |

**Name of Rating Official**

JAGELS, ERIC M

| **Date** *(mm-dd-yyyy)* | **Period Covered** |
|---|---|
| 06-11-2018 | **From** *(mm-dd-yyyy)* 04-16-2018    **To** *(mm-dd-yyyy)* 04-15-2019 |

This form is a mandatory part of the performance management process. Use it to record interim discussions of the rated employee's performance. At least one interim discussion session must be documented. Each discussion should identify areas of strength in the employee's performance and opportunities for improved effectiveness; review goals achieved and update work responsibilities; and provide a mechanism for the rating official and rated employee to have a compatible view of the outcomes of their discussion. Notations should highlight major points.

A copy of the completed form must be provided to the employee. The rater should keep the original for his or her own records. Use a separate form for each discussion.

**A. Discussion of Overall Performance:** The rater should briefly characterize the employee's overall performance and cite supporting examples.   The following items should be components in each discussion:

1. In considering performance to date, assess the performance areas where the employee was strongest:

SA Tyson-Phipps has been working tirelessly on attempting to close cases and working on criminal investigations.

2. Describe the performance areas on which the employee should focus over the coming months, including any areas of specific weakness or deficiency:

SA Tyson-Phipps should focus on how his actions, deeds and words are perceived by others.

3. Discuss the employee's demonstrated potential to take on greater responsibilities and which core competencies need the most additional development to succeed in higher level positions:

If SA Tyson-Phipps works on the issues identified here along with sharpening his interpersonal skills I feel he as the capacity for more responsibility.

4. Identify any needed changes to the employee's core work responsibilities or specific objectives:

N/A

**DS-1974**
**05-2015**

**Page 1 of  4**

**B. General Discussion:** Describe the employee's progress in meeting the core work responsibilities and achieving the goals and specific objectives established for the rating period. Cite specific policy and programmatic outcomes and their impact on the Department's mission.

Your communication to a representative of the US Attorney's Office for the Southern District of New York was highly unprofessional, it inaccurately characterized the discussions surrounding a case and you were ultimately unduly critical of New York Field Office management.  You will not communicate with anyone from the Assistant U.S. Attorney's (AUSA) office without informing and getting clearance from your supervisor or your Assistant Special Agent in Charge (ASAC).

| | |
|---|---|
| /s/ ERIC JAGELS | 06-11-2018 |
| Rating Official | Date *(mm-dd-yyyy)* |

**C. Optional Employee Comments:** The employee is encouraged but is not required to comment. The employee's signature acknowledges receipt of this form, not agreement with the conclusions recorded by the rating official.

This Professional Development Form directly stems from an email correspondence between the office of the US Attorney and I on 8 June 2018.  I would like to put what happened in its full context including the actual emails, which are below.  I do not believe anything I said to be inaccurate and I believe it is all backed up by the documented case record, which is why I want what was said and why I am receiving this to be on the record with this form so the situation can be put in its full context.  I do understand that my email, if read by someone with more information about what I was talking about than I provided, can be interpreted in a way that might not cast NYFO and DS in the best light and that I could have chosen other words.   The email I sent was in response to an email from the US Attorney's office offering to answer questions. In my email, I specifically asked if the sender had time to help me understand what the office is looking for during my case presentations so I could better give them what they are seeking.  Putting things in the full context, I sent the email the morning of 8 June 2018.  On 7 June 2018, at the end of the day, I was asked by my supervisor to reach out to a contact I have in the consular affairs legal office to ask for a sample letter and or guidance about the best way to present a passport revocation case to them.  At the time it was my thinking that I was doing the same thing with this request so that I could more completely do my job.  In doing so, I cited the circumstances in a case which multiple AUSAs declined prosecution, the FPM said there was no fraud, and which I believed there to be no fraud.  I did not give any specific details of the case only the generic set of facts. Specifically I said "[f]or example I have a case where there was an allegation of two-parent consent fraud because the non-custodial parent, who agreed the child should get a passport so they child could, in fact, come to visit him, signed a power of attorney to his child so he could sign on the father's behalf because the father was not in the country. "  After this, I stated my opinion regarding how I wanted to handle the case with my rationale, which was a finding of no fraud and closing the case.  I then stated that "management"

*(continued on page  3)*

| | |
|---|---|
| /s/ JABARI-JASON TYSON-PHIPPS | 06-15-2018 |
| Rated Employee | Date *(mm-dd-yyyy)* |

**DS-1974**                                                                                                                                    **Page 2 of  4**

**C. Continued**

felt different and had me present the case, which I did as instructed.  That was the only time I said anything about "management" and I did not specify anyone specifically. This is what is being deemed as highly critical of "management" from the perspective of people with the information I did not include in the email.  These people were not party to the email; they only received it because it was forwarded to them.  There was nothing secret about the email at all.  In fact, on multiple occasions, I discussed having such a conversation with the US Attorney's office with management.    I had not had an opportunity to do so and when this individual offered; I took him up on the offer. What I did not say was the passport application was submitted 28 June 2017 almost a year prior; that I had been assigned to the case 9 August 2018; and that I had presented the case to be closed to management 29 December 2017 with a finding of no fraud but was instructed by management to present the case against the mother who by no evidence knew the father did not sign.  I further did not say that two AUSAs including the chief intake AUSA actually laughed about the case and declined it when I did present it on 2 January 2018, which was embarrassing to me.  I did not say that on that same day I informed the ASAC the case was declined and rather than allowing the case to be closed he instructed me to jurisdiction shop the case to Pennsylvania. I further did not say that the USA office in the EDPA also declined the case and that I was told they were confused why anyone would present this case.  I did not put in the email that the fraud prevention manager from the passport office with years of experience said this was not fraud. In fact, my email in no way states the result of the presentation of the facts, only the generic facts of a case that I had.  What should be noted is regardless of whether there is a cognizable criminal offense against any of the adults in this case, the minor child is a US citizen and entitled to a passport which she has been denied for going on a year.The minor child, her parents, two passport agencies, and the command center have continuously called and reached out to me to try to resolve this situation, which still as on 15 June 2018 has not been resolved because the case has not been signed off on.  This is despite me submitting the closing report in April which went against my opinion and that of 2 US Attorneys' offices and the Fraud Prevention Manager that there was fraud after the draft sat for months.  This is even after the email so cannot say they are not aware of the situation.The Applicant has lost money on several trips as well as family time together.  The minor child called me around the same time and stated her father has taken ill in the Dominican Republic and she needs her passport to go see him.  Calls like that were on my mind when I mentioned the circumstances in the email.   As a result of me speaking out about these circumstances which I feel are not right, fair, or proper procedure in the treatment of a minor US citizen who has done no wrong but yet is suffering consequences, I have been punished multiple times.  This includes having opportunities taken from me, being reprimanded including this, a poor EER for the rating period, and suffering different treatment in the office.  I was pulled into a meeting with the ASACs and reprimanded.   They pointed to the prosecutorial guidelines for the office in NYFO orientation book.  The problem is that I did in fact follow those guidelines.  Specifically they say:"DSS Agents of New York Field Office will seek prosecution of passport and visa fraud suspects, when investigation reveals probable cause in affiliation with th following:Suspect(s): who:•   Investigation reveals probable cause of passport fraud, while revealing that the:•   Suspect has prior felony convictions,•   Suspect has prior crimes of violence with handguns,• Ongoing criminal nexus to mail fraud, social security fraud, financial and/or other "white collar" crimes.• Immigration offender, moral turpitude crimes and re-entry after deportations.•   Suspect(s) passport or visa fraud activity involves nexus to transportation and possible endangerment of children.•   Suspect(s) passport or visa fraud activity involves nexus to smuggling of humans for purposes of indentured servitude or sexual slavery.•   Passport fraud investigation reveals "identity theft" from death identity or stolen identity of a living U.S. citizen.•   Passport fraud investigation reveals lower level rung to false "breeder" document vendors.•   Preponderance of false documents investigation "public integrity" abuse in state, federal or local government agencies.•   Passport and visa fraud offenses as a conveyance to terrorism activity (funding, conspiracy, surveillance, or endangering the lives of U.S. citizens).•   Passport and visa offenses that involve the International Parental Child Abduction (IPCA) cases."This case does not meet any of these guidelines.  Yet I was told to present the case and I did as instructed.  To that end, the case was declined in multiple jurisdictions, and yet has not as of 15, June 2018 been closed which has resulted in the wrongful denial of a minor US Citizen being given a passport to which she is entitled. I sought out guidance from the US Attorney's office on how best to handle cases, something I had been asked to do the day before in similar circumstances.  This is why I am getting this Professional Development Form, because I indirectly generically mentioned circumstances that are embarrassing to the office, which they have still failed to remedy a week later, and because I attempted to find a way to resolve it so I can do my job in the proper way.I understand completely that the email can be perceived as critical of NYFO management if one adds the context, which I

**C. Continued**

left out; however, a fair reading, in my opinion, clearly shows that was not my intent.  Not only do I leave out names, and the details, which are embarrassing, I actually state my intent, seeking information how to best present cases, in the opening paragraph and end with the same.  If anything, if one were to read my email in the other light, I am speaking out about a wrong being committed that is still being committed after going through all of my chain of command and that is why I am receiving this Professional Development Form.
____From the AUSAHey guys.  My apologies, but I do not think I will be able to make it Wednesday.  Please feel free to give me a shout if any questions come up.  Thanks, [AUSA]My response:Hi [AUSA]:I'm not sure if we have met or if you can help me with this but it's something I that I've been trying to figure out and work on since I joined DS. My ask upfront is if you had a bit of time to discuss what you all are looking for and/or do you have a copy of the prosecutorial guidelines you could share.A bit of background I am a lawyer as well and I take a little backlash for it around the office even though I think it is helpful in understand some of the more nuance legal aspects of our case work which many people do not seem to understand.  For example I have a case where there was an allegation of two parent consent fraud because the non-custodial parent, who agreed the child should get a passport so they child could in fact come visit him, signed a power of attorney to his child so he could sign on the father's behalf because the father was not in the country.  My gut said no fraud, especially after the non-custodial parent appeared and replaced the form with one he signed in front of me and provided a sworn statement to me. Management said its fraud and to take it to you all because it should be prosecuted.  I still see no way that is meets any fraud statute when there is clearly no scienter and at best it is administratively not allowed by a rule you would have to dig deep for and which is still questionable. These are the kinds of back and forward discussions that happen and why I get the backlash because my response is often I am admitted in NY, the SDNY, and EDNY and I would not take that case. It is my humble opinion that pressing things like this makes us look bad and wastes time. This is where my question comes from; I am hoping I can get a better understanding of what you all need and/or are looking for so I can be able to package my things better and or know what to spend more time on. For example in another case, it came to us as passport fraud but I have enough evidence to add on bank fraud, wire fraud, mail fraud charges as well. Would that be better to lead with those or does it not matter which charge and it is dependent on the Subject or some other factors. Thanks in advance,J

U. S. Department of State

# PROFESSIONAL DEVELOPMENT FORM
## For All Foreign Service Employees

| **Name of Employee** *(Last, First, MI.)* | **Post or Office/Position Title** |
|---|---|
| TYSON-PHIPPS, JABARI-JASON | 172684 - DS/FLD/NYFO<br>SPECIAL AGENT |

**Name of Rating Official**

JAGELS, ERIC M

| **Date** *(mm-dd-yyyy)*<br>06-11-2018 | **Period Covered**<br>**From** *(mm-dd-yyyy)* 01-23-2018   **To** *(mm-dd-yyyy)* 04-15-2019 |
|---|---|

This form is a mandatory part of the performance management process. Use it to record interim discussions of the rated employee's performance. At least one interim discussion session must be documented. Each discussion should identify areas of strength in the employee's performance and opportunities for improved effectiveness; review goals achieved and update work responsibilities; and provide a mechanism for the rating official and rated employee to have a compatible view of the outcomes of their discussion. Notations should highlight major points.

A copy of the completed form must be provided to the employee. The rater should keep the original for his or her own records. Use a separate form for each discussion.

**A. Discussion of Overall Performance:**  The rater should briefly characterize the employee's overall performance and cite supporting examples.   The following items should be components in each discussion:

1. In considering performance to date, assess the performance areas where the employee was strongest:

SA Tyson-Phipps has been working tirelessly on closing cases and criminal investigations.

2. Describe the performance areas on which the employee should focus over the coming months, including any areas of specific weakness or deficiency:

SA Tyson-Phipps should focus on how his actions, deeds and words are perceived by others.

3. Discuss the employee's demonstrated potential to take on greater responsibilities and which core competencies need the most additional development to succeed in higher level positions:

SA Tyson-Phipps needs to work on his Interpersonal Skills.

4. Identify any needed changes to the employee's core work responsibilities or specific objectives:

N/A

**DS-1974**
**05-2015**

**B. General Discussion:**  Describe the employee's progress in meeting the core work responsibilities and achieving the goals and specific objectives established for the rating period. Cite specific policy and programmatic outcomes and their impact on the Department's mission.

You will not communicate with anyone from the Assistant U.S. Attorney's (AUSA) office without informing and getting clearance from your supervisor or your Assistant Special Agent in Charge (ASAC).

| | |
|---|---|
| /s/ ERIC JAGELS | 08-13-2018 |
| Rating Official | Date *(mm-dd-yyyy)* |

**C. Optional Employee Comments:** The employee is encouraged but is not required to comment. The employee's signature acknowledges receipt of this form, not agreement with the conclusions recorded by the rating official.

This Professional Development Form directly stems from an email correspondence between the AUSA's office and I on 8 June 2018.  I would like to put what happened in its full context including the actual email which is reproduced below.  It is my contention that nothing I said is inaccurate and that it is all backed up directly by the documented case record and evidence.  I do understand that it can be interpreted in a way that might not cast NYFO and DS in the best light and should not have been written as it was.  The email I sent was in response to an email from a person from the AUSA's office offering to answer questions. In response to the email correspondence with this person which I did not start, I took him up on the offer and asked him to help me understand what his office is looking during case presentations so I could better give them what they are seeking.   As an example, I cited to the circumstances in a case which multiple AUSAs declined prosecution, the FPM said there was no fraud, and which I believed there to be no fraud.  I did not give any PII or details of the case only the generic set of facts. Specifically I said "For example I have a case where there was an allegation of two-parent consent fraud because the non-custodial parent, who agreed the child should get a passport so they child could, in fact, come to visit him, signed a power of attorney to his child so he could sign on the father's behalf because the father was not in the country. "  After this, I stated my opinion of how such a case should be handled, a finding of no fraud and my rationale.  I then stated that "management" felt different and had me present the case which I did as instructed.  What I did not say was the passport application was done 28 June 2017 almost a year prior, I had been assigned to the case 9 August 2018 and that I had presented the case to be closed 29 December 2017 with a finding of no fraud but was instructed by the two NYFO ASACs, "NYFO Management," to present the case against the mother who by no evidence even knew the father did not sign. I further did not say that two AUSAs including the chief intake AUSA for the Eastern District of New York actually laughed about the case and declined when I did present

*(continued on page 3)*

| | |
|---|---|
| /s/ JABARI-JASON TYSON-PHIPPS | 10-11-2018 |
| Rated Employee | Date *(mm-dd-yyyy)* |

**DS-1974**                                                                                                                          **Page 2 of  4**

**C. Continued**

it on 2 January 2018 which was embarrassing to me.  I did not say that on that same day I informed ASAC Ugarte the case was declined and rather than allowing the case to be closed he first instructed me to jurisdiction shop the case to operation Checkmate and when I told him it was not eligible he told me to take it to RAC Michael Davies in Pennsylvania which to me seemed to be wrong in that we were shopping cases where there was no crime to find a friendly jurisdiction to force a non-criminal into the legal system to improve stats.  I further did not say that after expressing my opinion that this was not a crime and being threaten to do what I was told by management I did in fact do what I was told and complied.  The result was that the US Attorney's office in the EDPA also declined the case and that I was told they were also confused why anyone would present this case.  I did not put in the email that the fraud prevention manager from the passport office said this was not fraud.  In fact, my email in no way states the result of the presentation of the facts only generic facts of a case that I had.  What should be noted is regardless of the if there is a cognizable criminal offense against any of the adults in the actual case, the minor child is a US citizen and entitled to a passport which she has been denied for more than a year.  It was not until August of 2018 when what was going on in this case became more public that there was finally some movement to get the child the passport after the family missed several trips and called me nearly daily. The minor child, her parents, and two passport agencies called and reached out to me continuously to try to resolve this situation which was put in limbo because of this ASAC.  The Applicant lost money on several trips as well as family time together.  The minor child called me the week this happened and stated her father had taken ill in the Dominican Republic and she needs her passport to go see him.  It was because of calls like that the case was on my mind when I replied to the email.  Throughout all of that, even though the FPM, AUSAs and I the case agent all agreed no action was taken by NYFO management to ensure that a minor US citizen who is entitled to a passport received for which she paid.  The fact is I was attempting to do my job the right and legal way and this reprimand is being demanded by the same "NYFO Management" responsible for creating the problem because I dared almost shed light on what they were doing.  The reproduced email below will show that I NEVER refer to any of these things and none of it would be documented but for this write up because now I am forced for explain and defend my behavior. It is not noted that it comes after and EEO complaint.  The "embarrassing" thing would only be embarrassing to someone who knows the details I did not state and who is looking at the situation with those details.  "NYFO Management" during their counseling session stated that I did not or should have followed the SOP but the fact is I did.  In my orientation binder which they demanded I bring, they pulled out a page that refers to the "Prosecution Guildlines-January 2016" During this sit down ASAC Ugarte specifically put these in my face and said this is what I should be following but the fact is I did and it was them who were not.  Specifically they state:"DSS Agents of New York Field Office will seek prosecution of passport and visa fraud suspects, when investigation reveals probable cause in affiliation with the following:Suspect(s): who:•Investigation reveals probable cause of passport fraud, while revealing that the:•Suspect has prior felony convictions,•Suspect has prior crimes of violence with handguns,•Ongoing criminal nexus to mail fraud, social security fraud, financial and/or other "white collar" crimes.•Immigration offender, moral turpitude crimes and re-entry after deportations.•Suspect(s) passport or visa fraud activity involves nexus to transportation and possible endangerment of children.•Suspect(s) passport or visa fraud activity involves nexus to smuggling of humans for purposes of indentured servitude or sexual slavery.•Passport fraud investigation reveals "identity theft" from death identity or stolen identity of a living U.S. citizen.•Passport fraud investigation reveals lower level rung to false "breeder" document vendors.•Preponderance of false documents investigation "public integrity" abuse in state, federal or local government agencies.•Passport and visa fraud offenses as a conveyance to terrorism activity (funding, conspiracy, surveillance, or endangering the lives of U.S. citizens).•Passport and visa offenses that involve the International Parental Child Abduction (IPCA) cases.This case did not meet one of these circumstances and I as the investigating agent, the FPM who referred the case and ultimately the AUSA all agreed there was no probable cause. The argument given to me was that it is not for me and I assume any of these people to decide it is for "NYFO Management."  So Yet again I am being reprimanded for following the policy and ultimately I am sure will be further punished for putting this in writing which I don't feel is fair and which violates the whistleblower laws and protections.   Further, I think it is important to put the conclusion of this matter into context.  This case was referred by the Philadelphia FPM, Ray DeVoe.  After I spoke with DeVoe and sent him the power of attorney he stated that had he known that the case would have never been referred. He conferred with NY FPM Luis Linares who also agreed the case should not have ever been referred. Ultimately, "NYFO Management" had me refer a case to 3 jurisdictions, and had 3 AUSAs decline a case which I did not want to refer and which the referring person stated they would not have referred had they had

**C. Continued**

d the facts.  The Applicant as of August 13, 2018 is still waiting to get her passport which the FPMs agreed to work with her to get so I am actually being written up here for doing the right thing which they are trying to spin as being wrong when they ae the ones who had me shop a case that was not cognizable under the law.  In addition, when I spoke with Jim Murphy, the FPM from the National Passport Center, after his presentation to the office he also agreed a case like this should not have been presented nor should it have had it from the FPM's desk.  As a result of me speaking out about these circumstances of this case which I feel are not right, fair, or proper procedure in the treatment of a minor US citizen I have been punished multiple times including having opportunities taken from me, being reprimanded including this, a poor EER for the rating period, and suffering different treatment in the office.  I understand completely that sending an email to an AUSA that can be perceived as critical of NYFO management is not right but a fair reading of the email will show that was not my intent and if anything my email speaking out about I perceived to be a wrong being committed that is still being committed a clear violation of the whistleblower laws.  That is the context of why I am receiving this Professional Development Form.   Below is the verbatim copy and paste of the email I wrote which gives rise to this write up.   ** As an update this case was closed August 8, 2018, 1 year 1 month and a day after it was opened.  The child did receive the passport only because the Minor child, and both parents sat all day in the NY Passport office and the FPM over road things to make sure it happened.  That being said I was still against my judgment, the advice of  several FPMs, the the opinion of the AUSAs made to close this case as fraud found when I and all of those people all felt otherwise because I felt threatened with further retaliation if I did not.**____From the AUSA's office Hey guys.  My apologies, but I do not think I will be able to make it Wednesday.  Please feel free to give me a shout if any questions come up.  Thanks, [AUSA investigator] My response:Hi [AUSA investigator]:I'm not sure if we have met or if you can help me with this but it's something I that I've been trying to figure out and work on since I joined DS. My ask upfront is if you had a bit of time to discuss what you all are looking for and/or do you have a copy of the prosecutorial guidelines you could share.A bit of background I am a lawyer as well and I take a little backlash for it around the office even though I think it is helpful in understand some of the more nuance legal aspects of our case work which many people do not seem to understand.  For example I have a case where there was an allegation of two parent consent fraud because the non-custodial parent, who agreed the child should get a passport so they child could in fact come visit him, signed a power of attorney to his child so he could sign on the father's behalf because the father was not in the country.  My gut said no fraud, especially after the non-custodial parent appeared and replaced the form with one he signed in front of me and provided a sworn statement to me. Management said its fraud and to take it to you all because it should be prosecuted.  I still see no way that is meets any fraud statute when there is clearly no scienter and at best it is administratively not allowed by a rule you would have to dig deep for and which is still questionable. These are the kinds of back and forward discussions that happen and why I get the backlash because my response is often I am admitted in NY, the SDNY, and EDNY and I would not take that case. It is my humble opinion that pressing things like this makes us look bad and wastes time. This is where my question comes from; I am hoping I can get a better understanding of what you all need and/or are looking for so I can be able to package my things better and or know what to spend more time on. For example in another case, it came to us as passport fraud but I have enough evidence to add on bank fraud, wire fraud, mail fraud charges as well. Would that be better to lead with those or does it not matter which charge and it is dependent on the Subject or some other factors. Thanks in advance,J