# Exhibit M

 Gmail

Jabari-Jason Tyson-Phipps <​▮▮▮▮▮​@gmail.com>

## FW: APRIL - JUNE 2019 ADMINISTRATIVE PROMOTIONS FOR FOREIGN SERVICE EMPLOYEES

1 message

**Tyson-Phipps, Jabari-Jason** <Tyson-PhippsJ@state.gov>                 Fri, Apr 5, 2019 at 2:55 PM
To: "jabari.phipps@gmail.com" <​▮▮▮▮▮​@gmail.com>

Promoted

**Jabari-Jason Tyson-Phipps**

Special Agent | New York Field Office

U.S. Department of State | Diplomatic Security Service

Office: +1.201.346.8100

Mobile: +1.201.290.2922

**Official - SBU**

**UNCLASSIFIED**

---

**From:** Markert, Sarah N <MarkertSN@state.gov>
**Sent:** Monday, April 1, 2019 10:27 AM
**Cc:** Oestreich, Brett L <OestreichBL@state.gov>
**Subject:** FW: APRIL - JUNE 2019 ADMINISTRATIVE PROMOTIONS FOR FOREIGN SERVICE EMPLOYEES

BSAC 137,

I am forwarding you the attached cable (19 STATE 31482) for your reference. You are listed in the cable as eligible to receive an administrative promotion from FS-05 to FS-04, on the effective date shown next to your name (4/14/2019).

Please check your Employee Profile four weeks after the effective date to ensure that your promotion was processed correctly. If it is not reflected in your profile please let us know so we can follow up with HR/PE.

Additionally, your effective date is prior to the May 1st cut-off date for the Summer 2020 Tenure board. This means that you will be reviewed for tenure for the first time this Summer (sometime in late June). We will forward the cable with instructions when it is released.

Congrats on the promotion,

Sarah

## Sarah Markert

Special Agent | Career Development and Assignments Officer

Untenured 04s, 05s, and 06s, L - Z

U.S. Department of State | Bureau of Diplomatic Security

202-453-8147 \ markertsn@state.gov

# HREmployee Guide to HR Resources

*Entry-Level Blog Page*

*For entry-level (EL) questions, please visit the EL Sharepoint Site.*

**Official - SBU**

**UNCLASSIFIED**

---

**From:** SMART Core <svcsmartbtsewshprec1@state.gov>
**Sent:** Monday, April 1, 2019 10:01 AM
**Cc:** Collings, Eric M <CollingsEM@state.gov>; Moore, Judy S <MooreJS1@state.gov>; Boyle, Terence P <BoyleTP@state.gov>; McCracken, Bryan D <McCrackenBD@state.gov>; Hevia, Debra L <HeviaDL@state.gov>; Monster, Holly Waeger <MonsterHW@state.gov>; Otallah, Nicole I <OtallahNI@state.gov>; Szczepaniak, Barbara <SzczepaniakB@state.gov>; Mays, Terri L <MaysTL@state.gov>; Hansen, Rena E <HansenR@state.gov>; Chiappetta, Ann Marie <ChiappettaAM@state.gov>; Tribe, Shawn H <TribeSH@state.gov>; Lea, Randy S <LeaRS@state.gov>; Herbolich, Cash A <HerbolichCA@state.gov>; Dorsey, Shannon <DorseyDS@state.gov>; Schmidt, Thomas M <SchmidtTM@state.gov>; Anthes, Peter J <AnthesPJ@state.gov>; Madril, Tracy R <MadrilTR@state.gov>; Oestreich, Connie E <OestreichCE@state.gov>; Carwile, John L <CarwileJL@state.gov>; Osterhout, Kerry A (The Hague) <OsterhoutKA@state.gov>; Tepsuporn, Phenpaka <TepsupornP@state.gov>; Kula, Toni L <KulaTL@state.gov>; Savageau, Whitney T <SavageauWT@state.gov>; Miller, Andrew T <MillerAT@state.gov>; Markert, Sarah N <MarkertSN@state.gov>; Chery-Medor, Farah N <Chery-MedorFN@state.gov>; Wilson, Susan A <wilsonsa@state.gov>; Green, Gwendolyn S <GreenGS@state.gov>; Myatt, Mihaela <MyattM@state.gov>; Eastman-Guerrero, Viviana <EastmanGuerreroV@state.gov>; Florian, Aurelie <FlorianA@state.gov>
**Subject:** APRIL - JUNE 2019 ADMINISTRATIVE PROMOTIONS FOR FOREIGN SERVICE EMPLOYEES

**UNCLASSIFIED**

STATE SEAL

| | |
|---|---|
| **Info Office:** | ALDAC |

---

| | |
|---|---|
| **MRN:** | 19 STATE 31482 |
| **Date/DTG:** | Apr 01, 2019 / 011353Z APR 19 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | APER, AMGT |
| **Pass Line:** | For all DCMs, Management Officers and Human Resource Officers |
| **Subject:** | APRIL - JUNE 2019 ADMINISTRATIVE PROMOTIONS FOR FOREIGN SERVICE EMPLOYEES |

1. The Bureau of Human Resources Office of Performance Evaluation's (HR/PE) records indicate that the entry-level employees listed below are eligible for administrative promotion, if performance has been satisfactory (3 FAM 2329.3). Employees who meet the criteria for administrative promotion under these regulations will be promoted effective the beginning of the first pay period following eligibility (3 FAM 2329.3-5).

2. If performance has been less than satisfactory, supervisors must inform HR/PE via e-mail at HRPETenure@state.gov within 10 business days. A non-reply will be interpreted as evidence of satisfactory performance. Absent response, DGHR in Washington will execute promotion actions. Please note the Director General may temporarily defer the administrative promotion of an otherwise eligible employee in accordance with 3 FAM 2329.3-3 and 3 FAH-1 H-2327.

3.

| NAME | EFFECTIVE DATE | BUREAU/POST |
|---|---|---|
| ALCANTARA, TAMARA V | 04/14/2019 | RABAT |
| ANDREANO, MICHAEL JOHN | 05/12/2019 | GUANGZHOU |

| | | |
|---|---|---|
| BALSAM, CHRISTOPHER DAVID | 04/14/2019 | DS/FLD/WFO |
| BIED, CULLAN H | 04/14/2019 | KABUL |
| BLOOM, CHRISTOPHER ERIC | 04/14/2019 | DS/FLD/WFO |
| BRINGE, JOHN JOSEPH | 04/14/2019 | GUANGZHOU |
| DEEM, PAUL FREDERICK | 04/14/2019 | DS/FLD/WFO |
| DICKERSON, BRIANNA C. | 04/14/2019 | DS/FLD/LAFO |
| DOERTING, MATTHEW D | 04/14/2019 | ANKARA |
| ELZINGA, ELIOT KAEM | 04/14/2019 | DS/FLD/CFO |
| EMERT, JENNIFER C | 04/14/2019 | AMMAN |
| EMMERT, SARA ELLEN | 04/14/2019 | CARACAS |
| FIJOLEK, AMBER N | 04/15/2018 | SAO PAULO |
| FONTAINE, MEGAN ANN | 04/14/2019 | ISTANBUL |
| GRAVOT II, GUSTAVE JOHN | 04/28/2019 | DS/FLD/NYFO |
| GRECO, CINDY D | 04/14/2019 | DHAKA |
| GRMELA, RACHEL D | 04/14/2019 | BEIJING |
| GUTHRIE, LAUREN A | 05/12/2019 | SAN SALVADOR |
| GUTIERREZ, ISABEL L | 05/12/2019 | CIU.JUAREZ |
| HERRERA, MICHELLE C | 04/14/2019 | LUSAKA |
| HOLDERNESS, JOSHUA K | 04/14/2019 | DS/FLD/LAFO |
| HOLMES, CHRISTOPHER R | 04/14/2019 | DS/FLD/WFO |
| JONES, LUCAS P | 05/12/2019 | CARACAS |
| KELLEY-BELL, BENNETT HATCHER | 04/14/2019 | DS/FLD/NYFO |
| KERMISCH, LINDSAY ELIZABETH | 04/14/2019 | KHARTOUM |
| LIU, STEPHEN | 05/12/2019 | GUANGZHOU |

| | | |
|---|---|---|
| LYNAH, JESSICA C | 04/14/2019 | KABUL |
| MANSFIELD, JAMES M | 04/14/2019 | DS/FLD/WFO |
| MARKLEY, JONATHAN W | 04/14/2019 | BANGUI |
| MCCOY, JENNIFER A | 05/01/2016 | COLOMBO |
| MEDVIGY, STEPHANIE K | 04/14/2019 | DS/FLD/CFO |
| MURRAY, COLLEEN M | 04/14/2019 | MANILA |
| NYGREN, ERIK J | 04/14/2019 | DS/FLD/HFO |
| OPONGBROWN, KEABRA Y. | 05/12/2019 | CIU.JUAREZ |
| PEREZ, BENJAMIN J | 04/14/2019 | BANGKOK |
| PUGH, ALEXANDRA RENEE | 04/14/2019 | DS/FLD/BFO |
| READY, DAYTON T | 05/12/2019 | SHANGHAI |
| REESE, PAIGE ELAINE | 04/14/2019 | BEIJING |
| ROBERTS, ALLISON LEANN | 04/14/2019 | DS/FLD/SFFO |
| RODRIGUEZ, JONATHAN | 04/14/2019 | FRANKFURT |
| SANDY, ALAPHIA MADIANA | 04/14/2019 | KINGSTON |
| SANTIAGO, AMANDA K | 04/14/2019 | DS/FLD/BFO |
| SCHMIDT, PALDEN ALEXANDER | 04/14/2019 | DS/FLD/HFO |
| SHAY, JASON M | 04/14/2019 | PRETORIA |
| SPRINGER, JESSICA J | 04/14/2019 | ABUJA |
| STERR, SEAN P | 05/12/2019 | MANAGUA |
| TOSHACH, MARJORIE R | 04/14/2019 | HANOI |
| TYSON-PHIPPS, JABARI-JASON | 04/14/2019 | DS/FLD/NYFO |
| VILLAO, EDUARDO | 04/14/2019 | DS/FLD/NYFO |
| WATTS, KATHARINE M | 04/14/2019 | TORONTO |

| | | |
|---|---|---|
| WHITE, ELIZABETH ANNE | 04/14/2019 | ADDIS ABABA |
| WILLIAMS, EMILIE C | 04/14/2019 | PORT AU PRIN |

**Signature:** Pompeo

---

**Drafted By:** HR/PE:Spinner, Mikayla

**Cleared By:** M:Kirkland, Kendra D

AF/EX:Conole, Karen E

WHA/EX:Pan, Angela P

EAP/EX:LaMontagne, David M

EUR-IO/EX/HR:Moppert, John P

NEA-SCA/EX:Stowe, Andrew D

HR/PE:Scandola, Joni

HR/SCU:Los Banos, Michelle G

HR/OAA/AD:Cline, Christy M

SES\BeerJH

**Approved By:** HR/DGHR:Perez, Carol Z

**Released By:** HR_DGHR:Eatmon, Frederica P - DG

**XMT:** BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL

---

**Action Post:** NONE

**Dissemination Rule:** DIS_ALDAC

**UNCLASSIFIED**



**StateSeal.gif**
4K



**United States Department of State**

**Director General of the Foreign Service
and Director of Human Resources**
*Washington, D.C. 20520*

**MAY – 3 2019**

Mr. Jabari-Jason Tyson-Phipps
2 Executive Dr. - D2101
Ft. Lee, NJ 07024

Dear Mr. Tyson-Phipps,

You became eligible for administrative promotion to FP-04, on April 14, 2019. However, pending further review of your performance record, I ordered the deferral of your administrative promotion in accordance with 3 FAH-1 H-2337.(1)(2). The Assistant Special Agent in Charge notified the Office of Performance Evaluation (HR/PE) that your performance this rating period has been unsatisfactory. In addition, I am also ordering the temporary deferral of your administrative promotion pending resolution of an open case in the Office of Employee Relations (HR/ER). Issues of loyalty, security, misconduct, suitability, or malfeasance are grounds for deferral of promotion consideration.

As prescribed in 3 FAH-1 H-2327.2, you are invited to submit comments or provide any other information that you consider pertinent to the case. You should submit any comments or information to me within 10 calendar days of receipt of this letter. I understand this may come across as disappointing news, however, HR/PE is following your open case through HR/ER and will notify you when the case has been resolved.

Sincerely,

Carol Z. Perez

Affidavit A
Page 307 of 977



See Instructions Before Completing DS-5055

U.S. Department of State

# U.S. FOREIGN SERVICE EMPLOYEE EVALUATION REPORT

| I. SUBMISSION CONTROL | | |
|---|---|---|

| DATE RECEIVED IN POST/BUREAU  *(mm-dd-yyyy)*<br>05-03-2019 | DATE RECEIVED IN HR/PE  *(mm-dd-yyyy)* | |
|---|---|---|

| NAME OF EMPLOYEE BEING RATED   *(Last, First, MI)*<br>TYSON-PHIPPS, JABARI-JASON | GRADE<br>FS-05 | EMPLOYEE IDENTIFICATION NUMBER<br>172590 |
|---|---|---|

| TYPE OF REPORT<br>Regular | POSITION TITLE<br>SPECIAL AGENT | POST OR ORGANIZATION<br>DS/FLD/NYFO | PERIOD COVERED  *(mm-dd-yyyy)*<br>From 04-16-2018 To 04-15-2019 |
|---|---|---|---|

| RATER - NAME, TITLE<br>JAGELS, ERIC M.<br>SUPERVISORY SPECIAL AGENT | RATER GRADE<br>FS-02 | REVIEWER - NAME, TITLE<br>CARLSON, PETER M.<br>ASSISTANT SPECIAL AGENT IN CHARGE | REVIEWER GRADE<br>FS-02 |
|---|---|---|---|

*I consider this report to be complete, in conformance with the instructions, and adequately documented by specific examples of performance.*

| Signature of Rater after completion of Sections II, V, and VII<br>/s/ ERIC JAGELS | Date<br>05-03-2019 | Signature of Reviewer after completion of Section VIII<br>/s/ PETER CARLSON | Date<br>05-03-2019 |
|---|---|---|---|

## II. CERTIFICATION OF WORK RESPONSIBILITIES AND PERFORMANCE REVIEWS

Work responsibilities were established by rater, reviewer, and employee on *(mm-dd-yyyy)*      04-23-2019

Rater and rated employee held performance review sessions on at least two dates as follows:     *(mm-dd-yyyy)*

1.   10-12-2018     2.   08-15-2018

## III. ACKNOWLEDGEMENT OF RECEIPT (Completed by Rated Employee)

*I acknowledge receipt of this report, which has been completed for submission to a review panel.*

| Signature of Rated Employee<br>/s/ JABARI-JASON TYSON-PHIPPS | Date<br>05-03-2019 |
|---|---|

## IV. REVIEW PANEL STATEMENT  (Completed by Review Panel)

**A. Examples of Performance:** Have specific examples been provided in all sections?     Yes ☐   No ☐

**B. Certification:** This report has been prepared according to the regulations and contains no inadmissible material.     Yes ☐   No ☐

**C. If this report is submitted late or does not conform to regulations and instructions, indicate who is responsible:**

| Signature of Panel Chairperson | Name of Panel Chairperson | Date |
|---|---|---|

## V. POSITION DESCRIPTION, RESPONSIBILITIES, SPECIAL CIRCUMSTANCES

**Position Description: Size and function of the work unit and its position within the Mission or Bureau, number of employees rated and reviewed, amount and purpose of financial and physical resources for which the employee is accountable.**

Incumbent serves as a non-supervisory Special Agent (SA) assigned to one of seven operational units within the New York Field Office (NYFO) and reports to a Unit Supervisor.  Incumbent is responsible for managing and conducting criminal investigations, protective security (PRS) assignments and TDY's as necessary.

**Core Work Responsibilities**

**Model the Department of State's six core values (accountability, character, community, diversity, loyalty, service) and the Department's Leadership and Management Principles; observe and implement EEO principles.**

**Security Responsibilities:  Practice security awareness; report and/or address possible safety hazards and/or unsafe practices; follow security directives, regulations, and policies; safeguard classified information, material, and equipment.**

Conduct criminal investigations and pursue the prosecution of suspects involved in passport and visa fraud as well as threats against Department protected facilities and personnel.  Provide a safe and secure environment for the conduct of U.S. foreign policy by carrying out protective security (PRS) operations domestically and abroad.

**Goals/Specific Objectives: List in priority order the outcomes the employee seeks to achieve in support of Mission, Bureau, or Department goals.**

1.  Support the 73rd United Nations General Assembly in a special assignment.
2.  Support the protective detail for the United States Ambassador to the United Nations.
3.  Hone your criminal investigative skills by partnering with other agencies to develop more impactful cases.

DS-5055<br>05-2015

When completed on a Foreign Service employee, this is a performance evaluation report that shall be subject to inspection only by those persons authorized by Sec. 604 of the Foreign Service Act of 1980.

00484

Affidavit A  **Page 1 of  5**

Page 308 of 977

Case 1:23-cv-02816-LAK-GWG  Document 19-13  Filed 08/31/23  Page 11 of 32

| V. POSITION DESCRIPTION, RESPONSIBILITIES, SPECIAL CIRCUMSTANCES - CONT. |
|---|
| Special Circumstances: Unusual, unexpected or unpredictable circumstances that significantly altered operational conditions. |
|  |

## VI. DESCRIPTION OF ACCOMPLISHMENTS (Completed by Rated Employee)

**Describe your individual and collaborative accomplishments that advanced the Department's mission.**

The 2018 rating period was my second in the New York Field Office.  I continued to grow in my role with the Foreign Service by completing the FSI Basic Farsi Course, adding critical skills needed by the Department.  I also completed the Federal Law Enforcement Training Center's Advanced Interviewing Course which improved my active listening and communication skills.  I was able to use these skills to bring to justice several individuals who have alluded fraud detection for over thirty years, securing the integrity of the US passport system and promoting national security.

Many of these investigations were cold and involved subjects who have had several prior open DS cases but were never proven to be frauds.  These individuals lived in the US for thirty to forty years using stolen identities to avoid detection.  These cases were assigned to me to be closed but my instinct told me that something was wrong.

Using the investigative skills I have honed, I was able to prove in each of these cases that the prior investigations had missed something and that the individuals were in fact impostors who had stolen the identities of US Citizens thereby ending the victimization of innocent law abiding people.  In multiple cases, the subjects used the victims' names to commit serious crimes including drug trafficking.  In one case, I worked with multiple federal and state agencies to bring one such violent offender and his gang to justice.  In another, I led a multi-agency investigation and operation from inception to execution, including using my abilities as a licensed federal attorney to draft the complaint and procure search and arrest warrants for a convicted heroin trafficker in conjunction with the US Attorney's office.

As a result of my work, not only were these criminals arrested and removed from society, and the US in some cases, but the US Government seized nearly a half million dollars in contraband including kilograms of cocaine and heroin, cash, and luxury vehicles.  Further, we collected thousands of dollars of restitution from the offenders.

In addition to my cases, I assisted with other DS cases including the high profile expulsion of a diplomat and on an FBI led, multi-agency task force to execute a search warrant in a case involving a multifaceted scheme to defraud the government and others through varied acts of money laundering, H-1B visa, immigration, healthcare, and tax fraud.

In addition to my crim work, I volunteered this period with children both at the office holiday party and coordinating a "bring your child to work" day where I was able to show our building mates' children a little about what DS does.

I look forward to my next assignment to the protective security detail for the USUN Ambassador.  I had experience in this assignment this period supporting Ambassador Haley's detail.  Additionally, I had the opportunity to travel to the Middle East in support of Secretary Pompeo's diplomacy abroad.  My next assignment will afford me the opportunity to gain experience in another of DS's areas of responsibility so I will be a more rounded agent.

## VII. EVALUATION OF PERFORMANCE AND POTENTIAL (Completed by Rater)

**A. Appraise the employee's accomplishments in the areas of informational, operational, and relational effectiveness. Cite specific policy and programmatic outcomes and their impact on the Department's mission.**

SA Tyson-Phipps (JJ) strength's lie in Diplomatic Security's (DS) investigative mission.  He spent most of his time this rating period working on DS's criminal investigative program.

One case that was assigned to him seemed like a dead end as the SUBJECT had several prior cases opened on him by DS and other agencies which did not result in any finding of fraud.  JJ was only presented with facial recognition suggesting that three photos in different applications were related but no further information.  Using what was given, he was able to gather additional information through records checks and analyze it by cross referencing and finding patterns which resulted in him being able to track down the SUBJECT and ascertain his identity.  In this case, even though the names used by the SUBJECT had no discernable pattern, JJ was able to use his critical thinking skills to find people and records associated with those identities to narrow down an individual they all had in common and focus the investigation on that person.  JJ then reached out to law enforcement partners who he has built relationships with over his time at the New York Field Office and work with them to procure additional records which corroborated his theory of the identity of the SUBJECT.  He was then able to leverage his law enforcement contacts to end the SUBJECT's forty-two years of using identities stolen from U.S. Citizens and have him flagged for removal.

In another case, JJ was presented with an individual who walked into the passport office who was suspected of passport fraud and identity theft and was able to use his persuasive abilities to quickly obtain a written confession. Investigating further, JJ found the SUBJECT had committed tens of thousands of dollars in fraud in the victim's name

Case 1:23-cv-02816-LAK-GWG Document 19-13 Filed 08/31/23 Page 12 of 32

to which he was able to put an end. JJ sat down with the two criminal chiefs for the Southern District of New York about the case and when the case did not meet the guidelines for prosecution, JJ was able to network and meet an assistant director of the Enforcement and Removal Operations (ERO) division of ICE to make sure the SUBJECT would not go free and be able to continue to use a U.S. Citizen's identity to steal money and commit fraud. The assistant director of ERO was so impressed with the quality of JJ's reports and work he helped JJ coordinate an enforcement team which ultimately led to the SUBJECT being removed from the U.S. which allowed the victim of the identity theft to get his life back.

While JJ had some notable success, there were some areas that require improvement. JJ ran afoul of an interpretation of 12 FAH 9 H 022 (7) which relates to the carrying of unauthorized firearms when he used poor judgement to have a personal weapon on his ankle while on duty. JJ chose to secure the weapon on his person as opposed to using other reasonable alternatives. It should be noted that since this incident the section of the FAH has been amended to make its intent clearer.

Another instance where JJ's intent was in the right place, but the result was not ideal occurred during the United Nations General Assembly (UNGA). JJ was assigned to work "chutes" which are a series of police-controlled roads to allow protective details to drive to the UN as quickly as possible. Agents working chutes manage access control at these checkpoints to facilitate the movement of dignitaries participating in the UNGA.

There came an occasion when JJ, attempting to deescalate a conflict, after consulting with senior agents, walked a woman who was identified as an Indian "Minister" but not a DS protectee to the UN. During the time it took him to negotiate the walk, the USSS began to freeze all movement in preparation for the arrival of the President of the United States. JJ was able to bring the woman to the line to cross the street to the UN before their movement was frozen. While she thanked him and DS for his professionalism in attempting to facilitate her getting to her speech, in doing so there was confusion created by him acting beyond the scope of his job as a chutes' agent.

**B. Developmental area: Competency that needs the greatest strengthening to entrust employee with greater responsibilities. Cite example(s) from the current rating period.**
**Specify competency** Leadership

I want SA Tyson-Phipps to work on his judgement for his next rating period. JJ will being part of the protective detail for U.S. Ambassador to the U.N. He needs to remember that he will be one member of a small team in who is responsible for the security of a high profile position. He will have daily interaction with high ranking government officials as well as overseas travel where one poor decision could have serious consequences-regardless of how good his intentions are.

**C. Rater's Summary Judgment**
**For All Employees: Was performance satisfactory or better?** Yes ☒ No ☐
**For Untenured Employees:** ☐ The career candidate is likely to perform effectively across a normal career span
☒ Additional development and observation is needed
☐ The career candidate is unlikely to perform effectively even with additional experience

**VIII. REVIEW STATEMENT (Completed by Reviewer)**

**Assess the rated employee's preparedness for positions of greater responsibility, citing examples of performance. Describe the employee's relations with the rater, peers and subordinates.**
I completely agree with Eric Jagels assessment of SA Tyson-Phipps actions during this rating period. It is a 100% honest rendering of the events surrounding SA Tyson-Phipps last year in the New York Field Office.

Each one of the problems which befell SA Tyson-Phipps this year, and noted by his rating officer, was entirely self-inflicted. His judgment, decision making and interpersonal skills were at the heart of all of his problems. Eric has related the events surrounding his carrying an unauthorized firearm while on duty, but it should also be noted that despite this being a clear violation of State Department regulations, SA Tyson-Phipps continues to insist he did nothing wrong. His explanations for what transpired all fail to acknowledge responsibility for his actions. This theme is repeated in each incident described by Eric in his review of SA Tyson-Phipps performance this year.

Both Eric and I have sat down at length with SA Tyson-Phipps and talked about what he can do to become an effective special agent; and he is capable of being an effective special agent. Unfortunately, none of the advice we gave to encourage him has been acted upon.

## IX. PERFORMANCE PAY (For SFS Only - Completed by Rater)

**Assess Performance keyed directly to the Performance Pay Criteria.**

## X. OPTIONAL STATEMENT BY RATED EMPLOYEE

**The rated employee may use this section to address activities or problems that the Rater or Reviewer did not adequately cover or aspects of the report that he or she believes should be clarified or corrected. Continuation sheets may be used.**

I feel the need to put in context some of the statements made by my reviewer.

The comments that I am not taking responsibility for my actions are not fair in my opinion. The ASAC demanded that I abjure my opinion and claim in favor of his and come to him "begging and crying" for mercy which I do not feel is proper. What I have always said is that the situation has more nuance than what is being presented.

12 FAH-9 H-326 states that agents are responsible for maintaining the safety, security, and accountability of their firearms and that we must take reasonable alternative actions to secure firearms when traditional means are not available to prevent loss, theft, or unauthorized use.

In this circumstance, I had in my possession a firearm for which I was licensed privately in the state in which we were at the time in question. As such, I was in compliance with all federal, state, and local laws. It should also be noted that the section of the FAH cited to has a purpose statement located in 12 FAH-9 H-011 which states that the purpose of the FAH is to provide "procedures and guidelines for the acquisition, handling, and protection of firearms used in connection with DS law enforcement and protection responsibilities in the United States and abroad. The FAM further states that it does "not place any limitations on otherwise lawful activities" regarding personal weapons not being used for those purposes which the firearm in question was not.

Additionally, I have been trained to carry a firearm with me at all times if I am carrying my credentials. That being said, given the realities of things in this country I prefer not to carry my duty weapon, which is large and not easy to conceal, when I am not on duty and carrying a badge.

At my own expense, I procured a private license and purchased the private firearm in question because it is smaller and easier to conceal to lessen the chance of an incident with law enforcement if my firearm is seen that will cost me my life.

Further it should be noted that prior to this incident I have brought up in writing with my supervisor questions regarding policies regarding firearms and the kindest way to put it is that I was referred to another senior agent. I was told by that agent that as a federal law enforcement agent I could "carry any gun I wanted." When I pushed back and questioned that he showed me that he was in fact carrying a personal firearm on his ankle, a fact that management knows, and has never admonished him in any way for it.

While maybe not relevant, the poor relationship between the ASAC and I should be noted. One particular incident of note that soured my opinion was a conversation about the passing of my uncle who raised me and who I refer to as my father and me being denied time off to grieve which occurred on May 3, 2018. He stated that no one cares because he was not my real father. He further went on to claim I never requested the time off in question because I didn't actually care about him when there is documented proof I did in fact make the request and that request was not granted and I was in fact docked pay for taking one day off to go to the funeral to read the obituary. It was from that point on that we have not had a good relationship.

This is all in addition to "management" threatening to "ruin my career" and being angry with me because I stood up to

Case 1:23-cv-02586-LAK-GWG Document 19-13 Filed 08/31/23 Page 14 of 32

| X. OPTIONAL STATEMENT BY RATED EMPLOYEE - CONT. |
|---|

what I believed to be unethical and perhaps illegal behavior that they suborned me to commit.

He has gone as far reporting to HR that I received an unsatisfactory rating which has now stopped me from getting tenure and stopped my administrative promotion when that is not the case. Further he did not open my ability to see what he wrote until the afternoon before the EER was due so I would not have time to reply to his comments.

It is in that context that this was written. With that being said, the firearm in question was carried on my personal time in a state in which I was licensed in route to temporary duty over two hours from my house. When I arrived at the hotel, I did not see a proper place where that weapon could be secured while I was on duty and rather than leave an unsecured weapon in the same hotel as the USUN Ambassador, I took what, given my experience and training, I believed to be a reasonable alternative way to secure the weapon. I separated the source of ammunition and placed it in my bag, thereby making the weapon inert, and then place the weapon in my ankle holster so I would always know where it was.

The weapon was not on my duty belt or in a place where the public would see it. In fact, through nearly the entirety of the detail it went unseen even by those working closely with me. It was not until, one agent who decided to keep a keen eye on me, noticed the black bottom of the holster because of the hem of my panted and its contrast with my socks while I was sitting as the down agent. That being said, I was staying at the same hotel as where I was working and never traveled outside during duty with the firearm.

All this being said, none of this "excuses" the behavior nor is it me suggesting the behavior did not occur. All I have stated is that there is nuance that gives the situation more context than it being a "clear violation as stated."

Further important context which is left out is that the incident was in fact investigated and the report of that investigation was given to HR and they have not made a determination that the rules were clearly violated as he did. In fact, as stated in my rater's statement, on February 19, 2019, the rule cited to, 12 FAH 9 H 022 (7), was amended to be clearer. My contention is that if the rule was clear and there was a clear violation as he stated, there would be no reason to change it after eight years.

Again to be clear, that is not to suggest that my interpretation of the rule nor my actions were correct but it to suggest that things were not as "clear" as is suggested. I feel this again is an attempt to villainize me because of prior history.

I am in no way minimizing or excusing the situation but the truth is he has taken what literally is a misunderstanding where there was no harm to anyone and which no one would have known about it and turned it into a literal federal investigation which did not see things as cut and dry as he does and now he is attempting to relitigate that case and punish me regardless of what the fact finders and adjudicators have said. Had I had better guidance regarding the rules and had I had other options my choices would have changed and in fact the situation has not repeated because with the clarification I took immediate action and made the necessary corrections.

Working with him has been a toxic environment not only for me but for several others and I look forward to moving away from the negativity of having someone constantly out to get you and being bullied by someone who holds rank over you. I look forward to my next post and turning over a new page where I can move forward in my career with the Foreign Service

 **Gmail**

JJTP Group <jjtpfile@gmail.com>

---

## Fwd: Clear act of retaliation
1 message

---

**JJTP Group** <                        >                      Fri, Aug 9, 2019 at 1:14 PM
To: Jabari-Jason Tyson-Phipps <jabari.phipps@gmail.com>

---

---------- Forwarded message ----------
From: **Tyson-Phipps, Jabari-Jason** <Tyson-PhippsJ@state.gov>
Date: Monday, May 13, 2019
Subject: Clear act of retaliation
To: "Dumas, Timothy W" <DumasTW@state.gov>
Cc: "Dietz III, Stephen B" <DietzS@state.gov>, "Perez, Carol Z" <PerezCZ@state.gov>, "Merten, Kenneth H" <MertenKH@state.gov>, "Joyner, Christopher T" <JoynerC@state.gov>, "Miller, Brittaney M (S/OCR)" <MillerBM3@state.gov>, "Townsend, Heather A" <TownsendHA@state.gov>, "Evanoff, Michael" <EvanoffM@state.gov>, "Schurman, Christian J" <SchurmanCJ2@state.gov>, "Scandola, Joni" <ScandolaJE@state.gov>, "Caramanica, Janice F" <CaramanicaJF@state.gov>, "Hall, Erica" <HallE1@state.gov>, "Smith, Gregory B (S/OCR)" <SmithGB@state.gov>

Sir:

I spoke with you regarding this earlier. This is clearly beyond the scope of what is an acceptable act of retaliation that as I understand it your will not address.

I was given an EER with a satisfactory rating on May 3, 2019. Sometime before the EER was submitted the ASAC, who is under your management, in a clear violation of the FAH submitted a report claiming I received an unsatisfactory rating when that was not the case. The EER was signed and submitted to HR by myself, the ASAC, and my supervisor with a satisfactory rating. When this was pointed out to DG Perez and PDAS Merten, the next Monday morning my EER was returned from HR and my satisfactory rating was changed to a unsatisfactory rating in a clear and blatant violation of the FAH. It should be noted that this all occurred after I rejected an EEO settlement for previous retaliation. Not once did I receive a PIP or any documentation as is required to receive an unsatisfactory EER yet I was told the ASAC did not care about the rules.

When I brought this to your attention you told me I needed to work in the channels and you would not do anything about it. Now today I received an amended EER with changes the unsatisfactory but changes my rating to say I should be fired which is not acceptable because that is not what it said prior.

My rating was intentionally lowered to retaliate against me for complaining and I suspect what I wrote in my section X box. How is it allowed that he is allowed to lower my rating and add the comment "I do not recommend JJ for tenure and I do not see him performing successfully at the next level." After I complain and have to fight to get him to comply with the black letter of the FAH. Nothing changed between May 3rd and today other than the fact I complained about the bullying and clear violation of the FAH and requested that this office follow the regulations.

It is so blatant you can see the time stamps in GEMS when they are making the amendment which is clearly after the EER was submitted on the 3rd of May ( Please see below).

The original signed EER is attached as well as the amended version and you can clearly see the difference. I was called into ASAC Carlson's office, the door was closed and I was threaten up front that I better sign the EER because nothing would change. I told him I no longer feel comfortable speaking with them especially with a closed door without my attorney and union rep present and removed myself from the situation.

That holds true. I no longer have faith in this the right thing being done here and cannot function like this. As we spoke about it is now affecting my health with me having chest pains from stress and shortness of breath at times. Rather than stopping the bullying they have continued and doubled down to the point where I fear for my health and clearly this office as no regard for that at all.

As such I am respectfully requesting you do something about this situation and to leave this office immediately as I am within my window to leave to my next assignment. Further I cannot sign an EER which so blatantly is a retaliation and in violation of every basic common sense EEO rule about not retaliating against an employee. When I bring this to you tell me nothing can be done and I find that unacceptable and I cannot continue to work under these conditions. Further I do not see where I should be threaten that I "better sign" an EER in which the rating has been changed to assassinate my character and defame me. I do no think that is proper, particularly when this was all held from me until the last minute when I was known I will not have an opportunity to reply. I am requesting you take appropriate actions.

Thank You

JJTP

Affidavit A
Page 13 of 97



Jabari-Jason Tyson-Phipps

Special Agent | New York Field Office

U.S. Department of State | Diplomatic Security Service

Office: +1.201.346.8100

**Official - Privacy/PII**

**UNCLASSIFIED**

---

**2 attachments**

**amended eer 2018 may 13, 2019.pdf**
69K

**Orginal Submitted and Signed EER 2018.pdf**
69K



See Instructions Before Completing DS-5055
U.S. Department of State

# U.S. FOREIGN SERVICE EMPLOYEE EVALUATION REPORT

| I. SUBMISSION CONTROL | | |
|---|---|---|
| DATE RECEIVED IN POST/BUREAU *(mm-dd-yyyy)* 05-03-2019 | DATE RECEIVED IN HR/PE *(mm-dd-yyyy)* | |

| NAME OF EMPLOYEE BEING RATED *(Last, First, MI)* TYSON-PHIPPS, JABARI-JASON | GRADE FS-05 | EMPLOYEE IDENTIFICATION NUMBER 172590 |
|---|---|---|

| TYPE OF REPORT Regular | POSITION TITLE SPECIAL AGENT | POST OR ORGANIZATION DS/FLD/NYFO | PERIOD COVERED *(mm-dd-yyyy)* From 04-16-2018 To 04-15-2019 |
|---|---|---|---|

| RATER - NAME, TITLE JAGELS, ERIC M. SUPERVISORY SPECIAL AGENT | RATER GRADE FS-02 | REVIEWER - NAME, TITLE CARLSON, PETER M. ASSISTANT SPECIAL AGENT IN CHARGE | REVIEWER GRADE FS-02 |
|---|---|---|---|

*I consider this report to be complete, in conformance with the instructions, and adequately documented by specific examples of performance.*

| Signature of Rater after completion of Sections II, V, and VII /s/ ERIC JAGELS | Date 05-03-2019 | Signature of Reviewer after completion of Section VIII /s/ PETER CARLSON | Date 05-03-2019 |
|---|---|---|---|

## II. CERTIFICATION OF WORK RESPONSIBILITIES AND PERFORMANCE REVIEWS

Work responsibilities were established by rater, reviewer, and employee on *(mm-dd-yyyy)*      04-23-2019

Rater and rated employee held performance review sessions on at least two dates as follows:   *(mm-dd-yyyy)*

1.   10-12-2018          2.   08-15-2018

## III. ACKNOWLEDGEMENT OF RECEIPT (Completed by Rated Employee)

*I acknowledge receipt of this report, which has been completed for submission to a review panel.*

| Signature of Rated Employee /s/ JABARI-JASON TYSON-PHIPPS | Date 05-03-2019 |
|---|---|

## IV. REVIEW PANEL STATEMENT  (Completed by Review Panel)

**A.   Examples of Performance:**  Have specific examples been provided in all sections?      Yes ☐     No ☐

**B.   Certification:**  This report has been prepared according to the regulations and contains no inadmissible material.     Yes ☐     No ☐

**C.   If this report is submitted late or does not conform to regulations and instructions, indicate who is responsible:**

| Signature of Panel Chairperson | Name of Panel Chairperson | Date |
|---|---|---|

## V. POSITION DESCRIPTION, RESPONSIBILITIES, SPECIAL CIRCUMSTANCES

**Position Description: Size and function of the work unit and its position within the Mission or Bureau, number of employees rated and reviewed, amount and purpose of financial and physical resources for which the employee is accountable.**

Incumbent serves as a non-supervisory Special Agent (SA) assigned to one of seven operational units within the New York Field Office (NYFO) and reports to a Unit Supervisor.  Incumbent is responsible for managing and conducting criminal investigations, protective security (PRS) assignments and TDY's as necessary.

**Core Work Responsibilities**

**Model the Department of State's six core values (accountability, character, community, diversity, loyalty, service) and the Department's Leadership and Management Principles; observe and implement EEO principles.**

**Security Responsibilities:  Practice security awareness; report and/or address possible safety hazards and/or unsafe practices; follow security directives, regulations, and policies; safeguard classified information, material, and equipment.**

Conduct criminal investigations and pursue the prosecution of suspects involved in passport and visa fraud as well as threats against Department protected facilities and personnel.  Provide a safe and secure environment for the conduct of U.S. foreign policy by carrying out protective security (PRS) operations domestically and abroad.

**Goals/Specific Objectives: List in priority order the outcomes the employee seeks to achieve in support of Mission, Bureau, or Department goals.**

1.  Support the 73rd United Nations General Assembly in a special assignment.
2.  Support the protective detail for the United States Ambassador to the United Nations.
3.  Hone your criminal investigative skills by partnering with other agencies to develop more impactful cases.

DS-5055 05-2015

When completed on a Foreign Service employee, this is a performance evaluation report that shall be subject to inspection only by those persons authorized by Sec. 604 of the Foreign Service Act of 1980.

00491

Affidavit A  **Page 1 of  5**

Page 315 of 977

Case 1:23-cv-02816-LAK-GWG Document 19-13 Filed 08/31/23 Page 18 of 32

| V. POSITION DESCRIPTION, RESPONSIBILITIES, SPECIAL CIRCUMSTANCES - CONT. |
|---|
| Special Circumstances: Unusual, unexpected or unpredictable circumstances that significantly altered operational conditions. |
| |

## VI. DESCRIPTION OF ACCOMPLISHMENTS (Completed by Rated Employee)

**Describe your individual and collaborative accomplishments that advanced the Department's mission.**

The 2018 rating period was my second in the New York Field Office. I continued to grow in my role with the Foreign Service by completing the FSI Basic Farsi Course, adding critical skills needed by the Department. I also completed the Federal Law Enforcement Training Center's Advanced Interviewing Course which improved my active listening and communication skills. I was able to use these skills to bring to justice several individuals who have alluded fraud detection for over thirty years, securing the integrity of the US passport system and promoting national security.

Many of these investigations were cold and involved subjects who have had several prior open DS cases but were never proven to be frauds. These individuals lived in the US for thirty to forty years using stolen identities to avoid detection. These cases were assigned to me to be closed but my instinct told me that something was wrong.

Using the investigative skills I have honed, I was able to prove in each of these cases that the prior investigations had missed something and that the individuals were in fact impostors who had stolen the identities of US Citizens thereby ending the victimization of innocent law abiding people. In multiple cases, the subjects used the victims' names to commit serious crimes including drug trafficking. In one case, I worked with multiple federal and state agencies to bring one such violent offender and his gang to justice. In another, I led a multi-agency investigation and operation from inception to execution, including using my abilities as a licensed federal attorney to draft the complaint and procure search and arrest warrants for a convicted heroin trafficker in conjunction with the US Attorney's office.

As a result of my work, not only were these criminals arrested and removed from society, and the US in some cases, but the US Government seized nearly a half million dollars in contraband including kilograms of cocaine and heroin, cash, and luxury vehicles. Further, we collected thousands of dollars of restitution from the offenders.

In addition to my cases, I assisted with other DS cases including the high profile expulsion of a diplomat and on an FBI led, multi-agency task force to execute a search warrant in a case involving a multifaceted scheme to defraud the government and others through varied acts of money laundering, H-1B visa, immigration, healthcare, and tax fraud.

In addition to my crim work, I volunteered this period with children both at the office holiday party and coordinating a "bring your child to work" day where I was able to show our building mates' children a little about what DS does.

I look forward to my next assignment to the protective security detail for the USUN Ambassador. I had experience in this assignment this period supporting Ambassador Haley's detail. Additionally, I had the opportunity to travel to the Middle East in support of Secretary Pompeo's diplomacy abroad. My next assignment will afford me the opportunity to gain experience in another of DS's areas of responsibility so I will be a more rounded agent.

## VII. EVALUATION OF PERFORMANCE AND POTENTIAL (Completed by Rater)

**A. Appraise the employee's accomplishments in the areas of informational, operational, and relational effectiveness. Cite specific policy and programmatic outcomes and their impact on the Department's mission.**

SA Tyson-Phipps (JJ) strength's lie in Diplomatic Security's (DS) investigative mission. He spent most of his time this rating period working on DS's criminal investigative program.

One case that was assigned to him seemed like a dead end as the SUBJECT had several prior cases opened on him by DS and other agencies which did not result in any finding of fraud. JJ was only presented with facial recognition suggesting that three photos in different applications were related but no further information. Using what was given, he was able to gather additional information through records checks and analyze it by cross referencing and finding patterns which resulted in him being able to track down the SUBJECT and ascertain his identity. In this case, even though the names used by the SUBJECT had no discernable pattern, JJ was able to use his critical thinking skills to find people and records associated with those identities to narrow down an individual they all had in common and focus the investigation on that person. JJ then reached out to law enforcement partners who he has built relationships with over his time at the New York Field Office and work with them to procure additional records which corroborated his theory of the identity of the SUBJECT. He was then able to leverage his law enforcement contacts to end the SUBJECT's forty-two years of using identities stolen from U.S. Citizens and have him flagged for removal.

In another case, JJ was presented with an individual who walked into the passport office who was suspected of passport fraud and identity theft and was able to use his persuasive abilities to quickly obtain a written confession. Investigating further, JJ found the SUBJECT had committed tens of thousands of dollars in fraud in the victim's name

to which he was able to put an end.  JJ sat down with the two criminal chiefs for the Southern District of New York about the case and when the case did not meet the guidelines for prosecution, JJ was able to network and meet an assistant director of the Enforcement and Removal Operations (ERO) division of ICE to make sure the SUBJECT would not go free and be able to continue to use a U.S. Citizen's identity to steal money and commit fraud.  The assistant director of ERO was so impressed with the quality of JJ's reports and work he helped JJ coordinate an enforcement team which ultimately led to the SUBJECT being removed from the U.S. which allowed the victim of the identity theft to get his life back.

While JJ had some notable success, there were some areas that require improvement.  JJ ran afoul of an interpretation of 12 FAH 9 H 022 (7) which relates to the carrying of unauthorized firearms when he used poor judgement to have a personal weapon on his ankle while on duty.  JJ chose to secure the weapon on his person as opposed to using other reasonable alternatives.  It should be noted that since this incident the section of the FAH has been amended to make its intent clearer.

Another instance where JJ's intent was in the right place, but the result was not ideal occurred during the United Nations General Assembly (UNGA).  JJ was assigned to work "chutes" which are a series of police-controlled roads to allow protective details to drive to the UN as quickly as possible.

There came an occasion when JJ, attempting to deescalate a conflict, who was identified as an Indian "Minister" but not a DS protectee to the UN.  During the time it took him to negotiate the walk, the USSS began to freeze all movement in preparation for the arrival of the President of the United States.  JJ was able to bring the woman to the line to cross the street to the UN before their movement was frozen.  While she thanked him and DS for his professionalism in attempting to facilitate her getting to her speech, in doing so there was confusion created by him acting beyond the scope of his job as a chutes' agent.

I do not recommend JJ for tenure and I do not see him performing successfully at the next level.

**B. Developmental area: Competency that needs the greatest strengthening to entrust employee with greater responsibilities. Cite example(s) from the current rating period.**
**Specify competency** <u>Leadership</u>

I want SA Tyson-Phipps to work on his judgement for his next rating period.   JJ will being part of the protective detail for U.S. Ambassador to the U.N.  He needs to remember that he will be one member of a small team in who is responsible for the security of a high profile position.  He will have daily interaction with high ranking government officials as well as overseas travel where one poor decision could have serious consequences-regardless of how good his intentions are.

**C. Rater's Summary Judgment**
**For All Employees: Was performance satisfactory or better?**     Yes  ☒     No  ☐
**For Untenured Employees:**     ☐  The career candidate is likely to perform effectively across a normal career span

☐  Additional development and observation is needed

☒  The career candidate is unlikely to perform effectively even with additional experience

**VIII. REVIEW STATEMENT (Completed by Reviewer)**

**Assess the rated employee's preparedness for positions of greater responsibility, citing examples of performance. Describe the employee's relations with the rater, peers and subordinates.**
I completely agree with Eric Jagels assessment of SA Tyson-Phipps actions during this rating period.  It is a 100% honest  rendering of the events surrounding SA Tyson-Phipps last year in the New York Field Office.

Each one of the problems which befell SA Tyson-Phipps this year, and noted by his rating officer, was entirely self-inflicted.  His judgment, decision making and interpersonal skills were at the heart of all of his problems.  Eric has related the events surrounding his carrying an unauthorized firearm while on duty, but it should also be noted that despite this being a clear violation of State Department regulations, SA Tyson-Phipps continues to insist he did nothing wrong.  His explanations for what transpired all fail to acknowledge responsibility for his actions.  This theme is repeated in each incident described by Eric in his review of SA Tyson-Phipps performance this year.

Both Eric and I have sat down at length with SA Tyson-Phipps and talked about what he can do to become an effective special agent; and he is capable of being an effective special agent.  Unfortunately, none of the advice we gave to encourage him has been acted upon.

**DS-5055**                                                    00493                                    Affidavit A  **Page 3 of  5**

| IX. PERFORMANCE PAY (For SFS Only - Completed by Rater) |
|---|

**Assess Performance keyed directly to the Performance Pay Criteria.**

| X. OPTIONAL STATEMENT BY RATED EMPLOYEE |
|---|

**The rated employee may use this section to address activities or problems that the Rater or Reviewer did not adequately cover or aspects of the report that he or she believes should be clarified or corrected. Continuation sheets may be used.**

I feel the need to put in context some of the statements made by my reviewer.

The comments that I am not taking responsibility for my actions are not fair in my opinion. The ASAC demanded that I abjure my opinion and claim in favor of his and come to him "begging and crying" for mercy which I do not feel is proper. What I have always said is that the situation has more nuance than what is being presented.

12 FAH-9 H-326 states that agents are responsible for maintaining the safety, security, and accountability of their firearms and that we must take reasonable alternative actions to secure firearms when traditional means are not available to prevent loss, theft, or unauthorized use.

In this circumstance, I had in my possession a firearm for which I was licensed privately in the state in which we were at the time in question. As such, I was in compliance with all federal, state, and local laws. It should also be noted that the section of the FAH cited to has a purpose statement located in 12 FAH-9 H-011 which states that the purpose of the FAH is to provide "procedures and guidelines for the acquisition, handling, and protection of firearms used in connection with DS law enforcement and protection responsibilities in the United States and abroad. The FAM further states that it does "not place any limitations on otherwise lawful activities" regarding personal weapons not being used for those purposes which the firearm in question was not.

Additionally, I have been trained to carry a firearm with me at all times if I am carrying my credentials. That being said, given the realities of things in this country I prefer not to carry my duty weapon, which is large and not easy to conceal, when I am not on duty and carrying a badge.

At my own expense, I procured a private license and purchased the private firearm in question because it is smaller and easier to conceal to lessen the chance of an incident with law enforcement if my firearm is seen that will cost me my life.

Further it should be noted that prior to this incident I have brought up in writing with my supervisor questions regarding policies regarding firearms and the kindest way to put it is that I was referred to another senior agent. I was told by that agent that as a federal law enforcement agent I could "carry any gun I wanted." When I pushed back and questioned that he showed me that he was in fact carrying a personal firearm on his ankle, a fact that management knows, and has never admonished him in any way for it.

While maybe not relevant, the poor relationship between the ASAC and I should be noted. One particular incident of note that soured my opinion was a conversation about the passing of my uncle who raised me and who I refer to as my father and me being denied time off to grieve which occurred on May 3, 2018. He stated that no one cares because he was not my real father. He further went on to claim I never requested the time off in question because I didn't actually care about him when there is documented proof I did in fact make the request and that request was not granted and I was in fact docked pay for taking one day off to go to the funeral to read the obituary. It was from that point on that we have not had a good relationship.

This is all in addition to "management" threatening to "ruin my career" and being angry with me because I stood up to

**DS-5055**

00494

---

**X. OPTIONAL STATEMENT BY RATED EMPLOYEE - CONT.**

---

what I believed to be unethical and perhaps illegal behavior that they suborned me to commit.

He has gone as far reporting to HR that I received an unsatisfactory rating which has now stopped me from getting tenure and stopped my administrative promotion when that is not the case. Further he did not open my ability to see what he wrote until the afternoon before the EER was due so I would not have time to reply to his comments.

It is in that context that this was written. With that being said, the firearm in question was carried on my personal time in a state in which I was licensed in route to temporary duty over two hours from my house. When I arrived at the hotel, I did not see a proper place where that weapon could be secured while I was on duty and rather than leave an unsecured weapon in the same hotel as the USUN Ambassador, I took what, given my experience and training, I believed to be a reasonable alternative way to secure the weapon. I separated the source of ammunition and placed it in my bag, thereby making the weapon inert, and then place the weapon in my ankle holster so I would always know where it was.

The weapon was not on my duty belt or in a place where the public would see it. In fact, through nearly the entirety of the detail it went unseen even by those working closely with me. It was not until, one agent who decided to keep a keen eye on me, noticed the black bottom of the holster because of the hem of my panted and its contrast with my socks while I was sitting as the down agent. That being said, I was staying at the same hotel as where I was working and never traveled outside during duty with the firearm.

All this being said, none of this "excuses" the behavior nor is it me suggesting the behavior did not occur. All I have stated is that there is nuance that gives the situation more context than it being a "clear violation as stated."

Further important context which is left out is that the incident was in fact investigated and the report of that investigation was given to HR and they have not made a determination that the rules were clearly violated as he did. In fact, as stated in my rater's statement, on February 19, 2019, the rule cited to, 12 FAH 9 H 022 (7), was amended to be clearer. My contention is that if the rule was clear and there was a clear violation as he stated, there would be no reason to change it after eight years.

Again to be clear, that is not to suggest that my interpretation of the rule nor my actions were correct but it to suggest that things were not as "clear" as is suggested. I feel this again is an attempt to villainize me because of prior history.

I am in no way minimizing or excusing the situation but the truth is he has taken what literally is a misunderstanding where there was no harm to anyone and which no one would have known about it and turned it into a literal federal investigation which did not see things as cut and dry as he does and now he is attempting to relitigate that case and punish me regardless of what the fact finders and adjudicators have said. Had I had better guidance regarding the rules and had I had other options my choices would have changed and in fact the situation has not repeated because with the clarification I took immediate action and made the necessary corrections.

Working with him has been a toxic environment not only for me but for several others and I look forward to moving away from the negativity of having someone constantly out to get you and being bullied by someone who holds rank over you. I look forward to my next post and turning over a new page where I can move forward in my career with the Foreign Service

# 3 FAM 2246.2-1 and 3 FAH-1 H-2326.2

## 3 FAM *2246.2-1  Entry-Level* Officer Candidates

*(CT:PER-715;   12-09-2013)*
*(State Only)*
*(Applies to Foreign Service Employees*

a. In accordance with the schedule in 3 FAM 2244, the EER is submitted to HR/PE and reviewed for compliance and adequacy.  Upon receipt of *an* EER in which the candidate's performance is rated as unsatisfactory, HR/PE will refer the case to the Director General for review.  No post or bureau will submit an unsatisfactory report on a candidate unless the candidate *received* notice in writing of the areas of performance *that* are deficient and *had* a reasonable opportunity to demonstrate satisfactory performance.  A period of 60 days ordinarily will be sufficient to demonstrate needed improvement, but a lesser period may suffice.  An unsatisfactory rating cannot be made unless the member has been given a reasonable opportunity (ordinarily 30-60 days) and adequate guidance to remedy deficiencies.

b. Upon being advised by the Director, HR/PE, that a candidate's service has been rated unsatisfactory, the Director General will:

(1)  Advise the candidate in writing of this decision and grant a period of at least 10 working days for the candidate to offer comment on that finding; and

(2)  Conduct further review or inquiry regarding the candidate's performance as the Director General may deem appropriate.  All material generated by such a review or inquiry or otherwise considered by the Director General will be made available to the candidate, who will be granted a period of *ten* working days from receipt of such material in which to offer comment.

Affidavit A
Page 320 of 977

c.  Upon completion of the above procedures, the Director General will review all relevant and admissible material on file regarding the candidate's performance and will do one of the following:

(1)  Advise the candidate that the finding of unsatisfactory performance has been changed to satisfactory, and initiate action to ensure that all personnel records reflect this determination; or

(2)  Direct that the candidate be separated from the Service under section *612* of the Act; or

(3)  Withhold judgment regarding possible action for a specified period of further on-the-job observation.  The post or bureau must submit to HR/PE the EER immediately following the additional period stating either that the candidate's performance is satisfactory or unsatisfactory.  The Director General will readdress the question based on overall performance history at that date.

d. When ordering separation under this section, the Director General will set the effective date, which may be no less than 30 days following notification of that action, excluding travel time required to return to Washington, DC, if abroad.

# *3* FAH-1 H-2814.3  Unsatisfactory Rating

*(CT:POH-199;   11-06-2017)*
*(State Only)*
*(Applies to Foreign Service Only)*

*a. In the case of tenured employees, a rater may not assign an overall unsatisfactory rating unless the rated employee has previously been advised in writing of the areas of performance which are inadequate and has been given a reasonable opportunity (normally 30 to 60 days) and adequate guidance to remedy these deficiencies.*

*b. For untenured employees, if the performance was unsatisfactory, the rater must comply with **3 FAM** 2246, **3 FAM**2256, and all other provisions to which these sections refer.  A rater may not assign an overall unsatisfactory rating unless the employee has previously been advised in writing of the areas of performance which are inadequate and has been given a reasonable opportunity (normally 30 to 60 days) and adequate guidance to remedy these deficiencies.  For untenured employees, if the rater assigns an unsatisfactory rating, the EER must be forwarded directly to HR/PE.  For untenured employees, the rater also must indicate whether the employee is recommended for tenure.*

c.  For procedures that apply to unsatisfactory ratings of career candidates and members subject to administrative promotions, see **3** FAH-1 H-2320 (Promotion of Members of the Foreign Service), **3** FAH-1 H-2240 (FSO Career Candidates) and **3** FAH-1 H-2250 (FS Specialist Career Candidates Program).  *HR/PE must be notified in advance when an unsatisfactory rating will be given to a career candidate and the EER must be forwarded directly to HR/PE*.

3 FAH-1 H-2326 ADMINISTRATIVE PROMOTION PROCEDURES
(TL:POH-90; 04-03-2003)
(State Only)
(Applies to Foreign Service Only)

a. At least one month before completion of the time-in-class required for an administrative promotion, the Director of the Office of Performance Evaluation in the Bureau of Human Resources (HR/PE) will inform the respective post or bureau of the member's eligibility for promotion and inquire whether the member's current performance has been judged satisfactory by the supervisor.

b. The post or bureau will advise HR/PE whether the member's performance has been satisfactory or unsatisfactory.

3 FAH-1 H-2326.1 Satisfactory Performance
(TL:POH-90; 04-03-2003)
(State Only)

Affidavit A
Page 322 of 977

(Applies to Foreign Service Only)

==If the response indicates satisfactory performance, and pertinent evaluation material covering earlier assignments while in present class also indicates that the employee's performance has been satisfactory, the Director of HR/PE will effect the necessary administrative action to promote the member.==

3 FAH-1 H-2326.2 Unsatisfactory Performance
(TL:POH-93; 08-20-2003)
(State Only)
(Applies to Foreign Service Only)

a==. A post or bureau may advise HR/PE that a member's performance has been unsatisfactory only if the member has previously been advised of the areas of performance which are deficient and been given a reasonable opportunity to demonstrate satisfactory performance. A period of 60 days ordinarily will be sufficient to demonstrate needed improvement, but a lesser period may also suffice depending upon the nature and extent of responsibilities, the member's time in the position, and similar circumstances.==

b. If adequate notice and opportunity to demonstrate improvement have not been provided or if the post or bureau believes that because of limited time at post or in current function, more consideration needs to be given to a member's performance before deciding whether his or her performance is satisfactory, a delay in promotional consideration for a period not to exceed 60 days should be requested. Before making such a request, however, the responsible management officer or executive officer will discuss the post's or bureau's proposed course of action with the member, ask for the member's views, and take these into consideration. The member will be informed of the post's or bureau's action in writing with a clear indication of the reasons for the delay. The member will be given every reasonable opportunity to demonstrate satisfactory performance during the succeeding trial period.

c. Ordinarily, a determination by the supervisor of unsatisfactory performance will be made only in connection with review for administrative promotion as outlined in paragraphs a and b in this section. However, when a member's performance is judged clearly unsatisfactory at any time after a reasonable opportunity for experience in a new position, the supervisor, in consultation with the reviewing officer and the management officer or the executive officer, may, if the situation warrants it, advise the member in writing of the unsatisfactory determination and the reasons, and provide a reasonable period, ordinarily 60 days, for the member to raise performance to a satisfactory level.

d. In cases under 3 FAM 2329, where the post or bureau has requested that consideration for promotion be delayed or a member has been formally notified of unsatisfactory performance, the post or bureau must submit to HR/PE an employee

evaluation report immediately following the trial period. The report should state either that the member's performance is judged satisfactory and, if appropriate, that the member is recommended for promotion, or that performance is judged unsatisfactory. In the case of a finding of unsatisfactory, the post or bureau may recommend either that the member be given an additional period to demonstrate satisfactory performance or that consideration be given to separation from the Service.

3 FAH-1 H-2326.3 Action on Unsatisfactory Ratings
(TL:POH-90; 04-03-2003)
(State Only)
(Applies to Foreign Service Only)

Whenever an unsatisfactory rating for a member subject to administrative promotion is received in HR/PE, any scheduled administrative promotion will be suspended pending completion of the review prescribed in 3 FAH-1 H-2327, and such review will be initiated forthwith

Affidavit A
Page 324 of 977

 **Gmail**

## Additional Documents

1 message

---

**Tyson-Phipps, Jabari-Jason** <Tyson-PhippsJ@state.gov>           Mon, May 6, 2019 at 7:34 PM
To: "Dumas, Timothy W" <DumasTW@state.gov>
Cc: "Perez, Carol Z" <PerezCZ@state.gov>, "Harley, Joyce E" <HarleyJ@state.gov>, "Beni, Alan J" <BeniAJ@state.gov>

---

Sir:

I have not had the time to review these but attached are what I think are the EEO complaints.  Again you will not the consistency in general.  I have also attached emails I have received about not contacting Tracy ever. That same day and set of emails from December 26 you will not I ask about DS policy on firearms and the response I got.  So if I am not to ask my supervisor than who?  I have attached a note I sent to myself about it. And an email from my Olympics supervisor where he even notes that I don't seem to be getting good guidance.  My original EER when we had this same fight last year when they were mad at me an retaliated is attached.  You will note the duties that he claimed I failed at were not my duties as I have attached them as well from the Duty Olympics head.  I have attached emails from responses to lead requests thanking me for my good work and from the AIC at UNGA praising me and saying I went beyond what is expected of a first tour agent.  You will note none of this is in my EER and what is in there was things that were provably false.  I think I previously sent the notes I sent from when I spoke to Ugate about wrongly taking away my training which is really what started all of this and which Carlson called me a liar and claimed the conversation never happened until I sent him the notes.

These are just a few of the docs I see on my desktop but again sir I want you to understand what I am going through constantly and how is this not bullying and harassment.  Even Ari said today had it been him with the gun no one would have said a thing and its true because no one has.

Respectfully sir, it's just not fair and it way out of hand and his last changing my satisfactory rating to the unsatisfactory rating after it was submitted to HR is the latest episode and is beyond the pale of acceptable because again it is openly and blatantly violating not only one black letter regulation but 2 which I have again just and paste below for your convenience.

Before I hit send, I did take a quick peek at first EEO complaint.  A few things I want to make clear that was written on 5/11/2018 according to the document.  You will note it's not polished and is again "raw." There is no attempt shine things up. What more I noted is that this was written before TK killed himself and I point out then that there is continuing bullying of him. How is this allowed to continue?  When will it be stopped? I point out there my fear of reprisals and here we are with just that being allowed.  Being neutral when one side is being unfairly beaten on is not being neutral respectfully, its sitting back and watching a bad things happen.

Thank you again and I apologize for any typos and anything that sounds disrespectful because that is not my intent but after two years of abuse only a fraction of which is documented here I want this to end and being told to again just go follow some process which as you see I have tried over and over with no results, it just does not work for me.

JJTP

# 3 FAM *2246.2-1* *Entry-Level* Officer Candidates

*(CT:PER-715;   12-09-2013)*
*(State Only)*
*(Applies to Foreign Service Employees*

a. In accordance with the schedule in 3 FAM 2244, the EER is submitted to HR/PE and reviewed for compliance and adequacy.  Upon receipt of *an* EER in which the candidate's performance is rated as unsatisfactory, HR/PE will refer the case to the Director General for review.  *No* post or bureau will submit an unsatisfactory report on a candidate unless the candidate *received* notice in writing of the areas of performance *that* are deficient and *had* a reasonable opportunity to demonstrate satisfactory performance.  A period of 60 days ordinarily will be sufficient to demonstrate needed improvement, but a lesser period may suffice.  An unsatisfactory rating cannot be made unless the member has been given a reasonable opportunity (ordinarily 30-60 days) and adequate guidance to remedy deficiencies.

b. Upon being advised by the Director, HR/PE, that a candidate's service has been rated unsatisfactory, the Director General will:

(1)  Advise the candidate in writing of this decision and grant a period of at least 10 working days for the candidate to offer comment on that finding; and

(2)  Conduct further review or inquiry regarding the candidate's performance as the Director General may deem appropriate.  All material generated by such a review or inquiry or otherwise considered by the Director General will be made available to the candidate, who will be granted a period of *ten* working days from receipt of such material in which to offer comment.

c.  Upon completion of the above procedures, the Director General will review all relevant and admissible material on file regarding the candidate's performance and will do one of the following:

(1)  Advise the candidate that the finding of unsatisfactory performance has been changed to satisfactory, and initiate action to ensure that all personnel records reflect this determination; or

(2)  Direct that the candidate be separated from the Service under section *612* of the Act; or

(3)  Withhold judgment regarding possible action for a specified period of further on-the-job observation.  The post or bureau must submit to HR/PE the EER immediately following the additional period stating either that the candidate's performance is satisfactory or

Affidavit A

unsatisfactory.  The Director General will readdress the question based on overall performance history at that date.

d. When ordering separation under this section, the Director General will set the effective date, which may be no less than 30 days following notification of that action, excluding travel time required to return to Washington, DC, if abroad.

# *3* FAH-1 H-2814.3  Unsatisfactory Rating

*(CT:POH-199;   11-06-2017)*
*(State Only)*
*(Applies to Foreign Service Only)*

*a. In the case of tenured employees, a rater may not assign an overall unsatisfactory rating unless the rated employee has previously been advised in writing of the areas of performance which are inadequate and has been given a reasonable opportunity (normally 30 to 60 days) and adequate guidance to remedy these deficiencies.*

*b. For untenured employees, if the performance was unsatisfactory, the rater must comply with 3 FAM 2246, 3 FAM 2256, and all other provisions to which these sections refer.  A rater may not assign an overall unsatisfactory rating unless the employee has previously been advised in writing of the areas of performance which are inadequate and has been given a reasonable opportunity (normally 30 to 60 days) and adequate guidance to remedy these deficiencies.  For untenured employees, if the rater assigns an unsatisfactory rating, the EER must be forwarded directly to HR/PE.  For untenured employees, the rater also must indicate whether the employee is recommended for tenure.*

c.  For procedures that apply to unsatisfactory ratings of career candidates and members subject to administrative promotions, see *3* FAH-1 H-2320 (Promotion of Members of the Foreign Service), *3* FAH-1 H-2240 (FSO Career Candidates) and *3* FAH-1 H-2250 (FS Specialist Career Candidates Program).  *HR/PE must be notified in advance when an unsatisfactory rating will be given to a career candidate and the EER must be forwarded directly to HR/PE.*

(TL:POH-90; 04-03-2003)

(State Only)

(Applies to Foreign Service Only)

a. At least one month before completion of the time-in-class required for an administrative promotion, the Director of the Office of Performance Evaluation in the Bureau of Human Resources (HR/PE) will inform the respective post or bureau of the member's eligibility for promotion and inquire whether the member's current performance has been judged satisfactory by the supervisor.

b. The post or bureau will advise HR/PE whether the member's performance has been satisfactory or unsatisfactory.

3 FAH-1 H-2326.1 Satisfactory Performance

(TL:POH-90; 04-03-2003)

(State Only)

(Applies to Foreign Service Only)

If the response indicates satisfactory performance, and pertinent evaluation material covering earlier assignments while in present class also indicates that the employee's performance has been satisfactory, the Director of HR/PE will effect the necessary administrative action to promote the member.

3 FAH-1 H-2326.2 Unsatisfactory Performance

(TL:POH-93; 08-20-2003)

(State Only)

(Applies to Foreign Service Only)

a. A post or bureau may advise HR/PE that a member's performance has been unsatisfactory only if the member has previously been advised of the areas of performance which are deficient and been given a reasonable opportunity to demonstrate satisfactory performance. A period of 60 days ordinarily will be sufficient to demonstrate needed improvement, but a lesser period may also suffice depending upon the nature and extent of responsibilities, the member's time in the position, and similar circumstances.

b. If adequate notice and opportunity to demonstrate improvement have not been provided or if the post or bureau believes that because of limited time at post or in current function, more consideration needs to be given to a member's performance before deciding whether his or her performance is satisfactory, a delay in promotional consideration for a period not to exceed 60 days should be requested. Before making such a request, however, the responsible management officer or executive officer will discuss the post's or bureau's proposed course of action with the member, ask for the member's views, and take these into consideration. The member will be informed of the post's or bureau's action in writing with a clear indication of the reasons for the delay. The member will be given every reasonable opportunity to demonstrate satisfactory performance during the succeeding trial period.

00504

Affidavit A

c. Ordinarily, a determination by the supervisor of unsatisfactory performance will be made only in connection with review for administrative promotion as outlined in paragraphs a and b in this section. However, when a member's performance is judged clearly unsatisfactory at any time after a reasonable opportunity for experience in a new position, the supervisor, in consultation with the reviewing officer and the management officer or the executive officer, may, if the situation warrants it, advise the member in writing of the unsatisfactory determination and the reasons, and provide a reasonable period, ordinarily 60 days, for the member to raise performance to a satisfactory level.

d. In cases under 3 FAM 2329, where the post or bureau has requested that consideration for promotion be delayed or a member has been formally notified of unsatisfactory performance, the post or bureau must submit to HR/PE an employee evaluation report immediately following the trial period. The report should state either that the member's performance is judged satisfactory and, if appropriate, that the member is recommended for promotion, or that performance is judged unsatisfactory. In the case of a finding of unsatisfactory, the post or bureau may recommend either that the member be given an additional period to demonstrate satisfactory performance or that consideration be given to separation from the Service.

3 FAH-1 H-2326.3 Action on Unsatisfactory Ratings

(TL:POH-90; 04-03-2003)

(State Only)

(Applies to Foreign Service Only)

Whenever an unsatisfactory rating for a member subject to administrative promotion is received in HR/PE, any scheduled administrative promotion will be suspended pending completion of the review prescribed in 3 FAH-1 H-2327, and such review will be initiated forthwith

**Jabari-Jason Tyson-Phipps**

Special Agent | New York Field Office

U.S. Department of State | Diplomatic Security Service

Office: +1.201.346.8100

**Official - Privacy/PII**

**UNCLASSIFIED**

Gmail - Additional Documents

**12 attachments**

📄 **answer to the glock question.pdf**
104K

📄 **Tyson-Phipps EEO complaint 11 March 2019 Uncor draft_ (002).docx**
72K

📄 **EEO complaint.docx**
45K

📄 **Note to self for record- In re 26 Dec 2017 Glock question.pdf**
86K

📄 **Email telling me no to email Tracy December 26.pdf**
83K

📄 **December 26 questions.pdf**
83K

📄 **Email from Olympics supervior.pdf**
48K

📄 **jagels eer 30 April 2018.pdf**
65K

📄 **PowerPoint of duties from Olympics .pdf**
81K

📄 **Libya Detail (Jabari-Jason Tyson-Phipps) (Correction in Red).pdf**
96K

📄 **Lead Request PF-2015-00787.pdf**
87K

📄 **Fw_ Ugarte notes.pdf**
49K

00506

Affidavit A
Page 630 of 757