UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JABARI-JASON TYSON-PHIPPS, :

: OPINION & ORDER
Plaintiff, 23 Civ. 2316 (LAK) (GWG)
:
-against-
:
SECRETARY MARCO RUBIO,
*U.S. Department of State*, :

Defendant. :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

Plaintiff Jabari-Jason Tyson-Phipps, a Diplomatic Security Special Agent employed by the United States Department of State, has filed a motion to amend his complaint.[1] For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

### A. Relevant Procedural History

Plaintiff filed the instant action on March 18, 2023, bringing claims against his employer, the United States Secretary of State, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Whistleblower Protection Enhancement Act ("WPA"), 5 U.S.C. § 2302(b)(8)-(9); 42 U.S.C. § 1981; the First, Second, and Fifth Amendments to the Constitution; and New York law. See Complaint, filed Mar. 18, 2023 (Docket # 1).

On October 8, 2024, the Court granted defendant's motion to dismiss plaintiff's complaint but allowed plaintiff to file a motion to amend the complaint "with respect only to his

---

[1] See Motion for Leave to Amend and Memorandum of Law in Support, filed Feb. 20, 2026 (Docket # 93) ("Mot."); Memorandum of Law in Opposition, filed Apr. 3, 2026 (Docket # 100) ("Opp."); Reply Memorandum of Law in Further Support, filed Apr. 8, 2026 (Docket # 102) ("Reply").

Title VII claims," holding that "any amendment addressed to his claims based on 42 U.S.C. § 1981, Bivens, and the other federal, state and [New York City] statutes referred to in the original complaint would be futile." See Tyson-Phipps v. Blinken, 2024 WL 4444281, at *2 (S.D.N.Y. Oct. 8, 2024), adopting in part, 2024 WL 4128445 (S.D.N.Y. Sept. 10, 2024).

Plaintiff filed the contemplated motion to amend, which we granted "to the extent of permitting a claim of retaliation under Title VII." See Tyson-Phipps v. Rubio, 779 F. Supp. 3d 440, 461 (S.D.N.Y. 2025). We found that hostile work environment or discrimination claims under Title VII would be futile. See id. Plaintiff thereafter filed a first amended complaint, which contains only a claim of retaliation under Title VII. See First Amended Complaint, filed May 5, 2025 (Docket # 44) ("FAC").

Defendant moved for dismissal of the FAC. See Notice of Motion, filed May 23, 2025 (Docket # 47). In opposing defendant's (second) motion to dismiss, plaintiff sought leave to amend his complaint (a second time). See Memorandum of Law in Opposition, filed May 30, 2025 (Docket # 50) at 12-13. The Court granted leave, cautioning:

> Plaintiff's request to "expand" the complaint in any form is denied. . . . If plaintiff wishes to file a second amended complaint that eliminates extraneous matter and that cures the failings identified in the Government's memorandum of law, plaintiff has leave to do so provided the second amended complaint . . . adds no new allegations, and seeks relief only for retaliation under Title VII.

Order, dated July 25, 2025 (Docket # 53) at 1.

Plaintiff duly filed a second amended complaint in accordance with this order. See Second Amended Complaint, filed Aug. 15, 2025 (Docket # 56) ("SAC"). This complaint concerned acts of retaliation from 2017 to 2020. See id. ¶¶ 30-63. Defendant filed an answer. See Answer, filed Sept. 2, 2025 (Docket # 57).

In September 2025, discovery commenced. See Scheduling Order, dated Sept. 26, 2025 (Docket # 61). Shortly thereafter, the Court tolled all discovery deadlines for the duration of the fall 2025 federal government shutdown. See Order, dated Oct. 28, 2025 (Docket # 63).

In November 2025, plaintiff sought permission to file another motion to amend, explaining that he wished to "add[] causes of action under the Whistleblower Protection Act . . . , the Administrative Procedure Act, and the Federal Tort Claims Act." Letter from Jabari-Jason Tyson-Phipps, filed Nov. 26, 2025 (Docket # 64) at 1. Plaintiff represented that "[a]ll proposed claims arise from the same course of action and conduct that forms the basis of my existing complaint." Id. The Court granted permission. See Order, dated Dec. 3, 2026 (Docket # 70).

In December 2025, plaintiff filed the contemplated motion, but we denied it without prejudice to renewal as it did not attach a copy of a proposed amended complaint. See Minute Entry, dated Dec. 24, 2025 (Docket # 79). That month, the Court also granted defendant's motion to stay discovery pending the disposition of the motion to amend. See Memorandum Endorsement, dated Dec. 17, 2025 (Docket # 73).

Plaintiff filed the instant motion — his fourth request to amend his complaint — on February 20, 2026. See Mot. On May 12, 2026, plaintiff filed a letter seeking permission to supplement his papers in support of the instant motion, which defendant opposed. See Letter from Jabari-Jason Tyson-Phipps, filed May 12, 2026 (Docket # 105) ("Tyson-Phipps Letter"); Letter from Mallika Balachandran, filed May 14, 2026 (Docket # 106). Having examined plaintiff's supplemental briefing papers, see Supplemental Submission in Further Support of Motion for Leave to File Third Amended Complaint, annexed as Ex. 1 to Tyson-Phipps Letter (Docket # 105-1), we deny his request to supplement. In these papers, plaintiff alleges that, in the time since he filed the instant motion, defendant handled an administrative grievance

proceeding in an unlawful manner. See id. Just as "a party may not amend its pleadings in its briefing papers," Enzo Biochem, Inc. v. Amersham PLC, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013), we cannot allow plaintiff to amend his proposed amended pleading during briefing.

B. Allegations in the Proposed Third Amended Complaint

Notwithstanding plaintiff's assertion that "[a]ll proposed claims arise from the same nucleus of operative facts that already underlie the existing Title VII retaliation claims" (actually, claim), Mot. at 10, the proposed third amended complaint ("Proposed TAC") in fact adds numerous factual allegations. See Redline Comparison Between SAC and Proposed TAC, annexed as Ex. AA to Mot., filed Feb 20, 2026 (Docket # 93-3). It contains 14 separate counts, some of which are broken into multiple sub-counts. See Proposed TAC, annexed as Ex. Z to Mot., filed Feb. 20, 2026 (Docket # 93-2). We summarize these counts briefly.

Count I of the proposed third amended complaint restates plaintiff's existing Title VII retaliation claim. Compare SAC ¶¶ 74-80 with Proposed TAC ¶¶ 116-22. This claim is premised on the same allegedly retaliatory actions described in the SAC. Compare SAC ¶¶ 30-63 with Proposed TAC ¶¶ 37-70. In brief, plaintiff alleges that after "reporting and opposing race discrimination, harassment, and retaliation," Proposed TAC ¶ 118, defendant "took adverse employment actions . . . including, but not limited to":

> (a) withholding administrative promotion due since April 2019; (b) denying training and advancement opportunities; (c) issuing unwarranted unsatisfactory performance evaluations; (d) confiscating law enforcement credentials and equipment; (e) placing Plaintiff on administrative leave and de facto suspension; (f) subjecting Plaintiff to unmerited fitness-for-duty examinations; (g) taking annual leave; (h) withholding Law Enforcement Availability Pay; and (i) suspending security clearance.

Id. ¶ 119.

Count II brings a retaliation claim under the WPA. See id. ¶¶ 123-32. Plaintiff alleges that he was punished for opposing "unlawful practices beyond Title VII discrimination that are nevertheless protected opposition activity," such as "refusing to falsify investigative and immigration records." Id. ¶ 126.

Count III challenges "agency action unlawfully withheld or unreasonably delayed" under the APA in relation to (a) defendant's failure to promote plaintiff and (b) defendant's failure to complete his periodic security clearance review. Id. ¶ 134; see id. ¶¶ 135-55. Plaintiff alleges that he "became eligible for automatic administrative promotion . . . in or about April 2019" but that defendant "has refused to process and confer" it "based on a withdrawn or non[-]final unsatisfactory [performance] rating . . . infected by admitted retaliation." Id. ¶¶ 137, 141. He also alleges that defendant "ceased processing his reinvestigation" (apparently part of his periodic security clearance review) after he "filed protected complaints in 2019." Id. ¶ 147.

Count IV seeks to set aside agency action under the APA. See id. ¶ 157. In "sub-counts" (a) and (b), plaintiff again challenges the allegedly retaliatory failure to complete his periodic security clearance review. See id. ¶¶ 158-72. In "sub-counts" (c), (d), (e), and (f), he alleges that defendant's various retaliatory actions violated the First, Second, and Fifth Amendments, and the WPA, respectively, and thereby the APA. See id. ¶¶ 174-76, 178-85; 187-90; 192-96.

Counts V, VI, and VII arise under the Fifth Amendment. In Count V, plaintiff alleges that he was deprived of his salary, promotion, and employment "without constitutionally adequate pre-deprivation or post-deprivation process." Id. ¶ 203. In Count VI, he brings a "stigma plus" claim, alleging that the foregoing deprivations were accompanied by "stigmatizing accusations." Id. ¶ 211. In Count VII, he brings a substantive due process claim, alleging in sum and substance

that defendant's treatment of him "shocks the conscience." Id. ¶ 218 (quoting Wash. Teachers' Union Loc. No. 6 v. Bd. of Educ., 109 F.3d 774, 781 (D.C. Cir. 1997)).

Count VIII revolves around the allegation that defendant engaged in "unlawful retaliation in violation of the First Amendment." Id. ¶ 234.

In Count IX, plaintiff alleges defendant violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by failing to respond to a May 20, 2021 records request. See id. ¶¶ 236-243.

In Count X, plaintiff alleges that defendant's various retaliatory actions are "ultra vires." See id. ¶¶ 245-49.

Count XI seeks "declaratory judgment under 28 U.S.C. [§§] 2201 and 2202 consistent with the relief sought in each Count." Id. ¶ 256.

Count XII seeks a writ of mandamus compelling defendant to promote him, complete his periodic security clearance review, restore his pay, and "take such other actions as are necessary to fulfill its clear, nondiscretionary duties." Id. ¶ 263.

Count XIII purports to revive a hostile work environment claim under Title VII. See id. ¶¶ 264-70.

Count XIV centers on the allegation that defendant "willfully and intentionally failed to maintain [his] records with the accuracy, relevance, timeliness, and completeness necessary to assure fairness in determinations relating to his promotion, clearance, discipline, pay, and continued employment, as required by" the Privacy Act, 5 U.S.C. § 552a. Id. ¶ 274.

## II. LEGAL STANDARDS

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend under this rule

is within the court's discretion. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). It may deny leave to amend for "good reason," including the reasons articulated in Foman v. Davis, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182). "The burden to explain a delay is on the party that seeks leave to amend," while "the non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021) (first quoting MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998); then quoting Grant v. Citibank (S.D.), N.A., 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)).

## III. DISCUSSION

The Court has given several opportunities to file an amended complaint. The latest deadline for the filing of an amended complaint was December 18, 2025. See Order, dated Dec. 3, 2025.

Defendant offers three reasons why we should deny leave to amend entirely, namely, that the instant motion "contravenes the Court's previous rulings"; that it is "unduly delayed"; and that the proposed TAC would be "futile." Opp. at 4.

### A. Whether Amendment Contravenes Previous Rulings

Defendant asserts that the Court made a "definitive ruling" that this case consisted only of a Title VII retaliation claim. Id. at 5. To support this assertion, defendant cites to our ruling on plaintiff's first motion to amend, which limited plaintiff to filing an amended complaint that only contained a Title VII retaliation claim. See Tyson-Phipps, 779 F. Supp. 3d at 461.

Defendant is correct that our initial grant of leave to amend extended only to a Title VII retaliation claim. But we cannot say that we made a "definitive" ruling then that there could never be a basis for a later motion to amend, such that, as defendant puts it, plaintiff is not now "allowed to expand the scope of this action." Opp. at 5.

B. Whether Amendment Is Unduly Delayed

Defendant also argues that plaintiff unduly delayed seeking leave to amend. Opp at 5-8. A court "has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). "In determining what constitutes "prejudice" in this context, a court considers "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citations omitted). Defendant does not appear to argue that plaintiff's delay has unduly prejudiced it or that defendant has acted in bad faith. Discovery has been stayed in this matter pending the instant motion's disposition, and it is not clear that discovery ever seriously started. There is certainly no evidence that any document searches would need to be re-done or depositions re-taken. No pretrial filings have been prepared. We cannot say that resolution of this case will be "significantly" delayed by amendment.

C. Whether the Proposed TAC is Futile

As stated, an "appropriate basis for denying leave to amend is that the proposed amendment is futile." Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Id. (citation omitted). "Because a determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6)," it is "'generally adjudicated without resort to any outside evidence,' and the court must accept all facts pleaded as true." GMO Gamecenter, Inc. v. Whinstone US, Inc., 2025 WL 2452164, at *2 (S.D.N.Y. Aug. 26, 2025) (quoting Wingate v. Gives, 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009)). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile." Id. (quoting Margel v. E.G.L. Gem Lab Ltd., 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010)).

We note that while plaintiff is proceeding pro se, he is a licensed attorney and thus we hold his pleadings to the standards expected of a represented litigant. See Tyson-Phipps, 779 F. Supp. 3d at 455.

1. Count I (Title VII)

Defendant does not argue that Count I is futile. See Opp. at 8 n.2 ("Count I appears to be substantively the same as the First Cause of Action in the Second Amended Complaint.").

2. Count II (WPA)

Defendant argues Count II of the proposed TAC is futile because "any Whistleblower Protection Act claims are not exhausted, as the Court previously found." Id. (citing Tyson-Phipps, 2024 WL 4128445, at *10). Plaintiff's original WPA claim was dismissed because it did not allege that plaintiff had exhausted his administrative remedies by seeking corrective action

from the Equal Employment Opportunity Commission ("EEOC"), Office of Special Counsel, or Merit Systems Protection Board ("MSPB"). See Tyson-Phipps, 2024 WL 4128445, at *10. The proposed TAC likewise contains no such allegations. It alleges only that plaintiff reported alleged wrongdoing within the State Department to the EEOC and the Office of Special Counsel. See Proposed TAC ¶¶ 27, 33. But it does not plead that plaintiff sought corrective action (i.e., action that would remedy defendant's alleged retaliation) from either body or that that he exhausted his claims for corrective action, which is a jurisdictional prerequisite to suit. See Chinniah v. FERC, 62 F.4th 700, 702-03 (2d Cir. 2023).

In his memorandum of law in support of the instant motion, plaintiff represents that "MSPB proceedings were dismissed on December 10, 2025, and EEOC Appeal No. 01-2024-005244 was closed on December 16, 2025, completing the exhaustion sequence underlying many of the proposed claims." Mot. at 18. But this representation is nowhere to be found in the proposed TAC. In any case, this representation would not suffice to allege that plaintiff has exhausted his administrative remedies with respect to his WPA claim because plaintiff does not tell us what the "MSPB proceedings" or "Appeal No. 01-2024-005244" were about.

Count II of the proposed amended complaint is thus futile.

3. Counts III-IV (APA)

Defendant argues Counts III and IV, which brings claims under the APA, are futile, principally because plaintiff has an adequate remedy under Title VII or other statutory regimes. See Opp. at 8-11. Under the APA, "agency action" — including "failure to act," 5 U.S.C. § 551(13) — can be reviewed only if it is "made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704. "Applying § 704, '[w]hen another statutory vehicle provides an adequate remedy in a court, claims brought under

the APA are properly dismissed.'" Panjiva, Inc. v. U.S. Customs & Border Prot., 342 F. Supp. 3d 481, 494 (S.D.N.Y. 2018) (quoting Pereira v. U.S. Dep't of Justice, 2016 WL 2745850, at *13 (S.D.N.Y. May 11, 2016), aff'd, 975 F.3d 171 (2d Cir. 2020). An adequate remedy is one that "offers relief of the same genre" as the APA; it need not provide "identical" relief. Garcia v. Vilsack, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation and internal quotation marks omitted).

Plaintiff has another adequate remedy with respect to Count III(a), his "agency action unlawfully withheld or unreasonably delayed" claim for failure to promote. While there is no Second Circuit case law on this exact issue, case law from the District of Columbia Circuit makes clear that "the Foreign Service Act provides 'a comprehensive system for reviewing personnel action[s] taken against federal employees'" in the Foreign Service. U.S. Info. Agency v. Krc, 989 F.2d 1211, 1217 (D.C. Cir. 1993) (quoting United States v. Fausto, 484 U.S. 439, 455 (1988)). A member of the Foreign Service such as plaintiff "cannot end-run the limitations within the Foreign Service Act's review scheme" via the APA. Beberman v. Rubio, 2025 WL 2531870, at *6 (D.D.C. Sept. 3, 2025), aff'd, 2026 WL 681765 (D.C. Cir. Mar. 10, 2026). Rather, he "must bring a grievance . . . through that scheme and then to court under [22 U.S.C. § 4140]." Id. (citing Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1014 (D.C. Cir. 2009)) (emphasis added). Plaintiff apparently brought such a grievance in September 2025 and is awaiting a decision capable of being challenged in court.[2] See Reply at 25. Thus, Count III(a) is futile.

---

[2] In a letter filed after the instant motion was briefed, plaintiff informed the Court that he had received "a final dismissal order issued by the Foreign Service Grievance Board . . . on May 11, 2026, in FSGB Case No. 2023-039." Tyson-Phipps Letter at 1. This "final dismissal order" apparently concerns an entirely separate grievance than the grievance plaintiff lodged in September 2025 regarding defendant's failure to promote him. Rather, it relates to plaintiff's "refusal to comply" with an allegedly illegal demand "to delete records that have been submitted

Counts III(b), IV(a), and IV(b) bring APA claims related to defendant's failure to complete his periodic security clearance review. This failure comprises one of the alleged retaliatory actions taken against him by defendant. See Proposed TAC ¶ 68 ("Defendant has . . . refus[ed] to review his clearance since 2019 in retaliation for his protected activities."). Thus, it forms part of his Title VII or WPA retaliation claims.

"A plaintiff cannot challenge an administrative decision or action under the APA when there is . . . a cause of action under Title VII." Grant v. Dep't of Treasury, 194 F. Supp. 3d 25, 30 (D.D.C. 2016). "Title VII is the exclusive remedy by which a federal employee can assert claims of race discrimination and retaliation arising from his . . . federal employment." Adeniji v. U.S. Dep't of Com. Census Bureau NY Reg'l Off., 2020 WL 882166, at *1 (S.D.N.Y. Feb. 21, 2020); see Conway v. Pompeo, 2018 WL 8800525, at *6 (E.D. Va. Sept. 17, 2018) ("Title VII provides the exclusive federal remedy for federal employees harmed by workplace discrimination" and is thus an "adequate remedy"), aff'd, 773 F. App'x 693 (4th Cir. 2019). Plaintiff's own cases confirm that Title VII claims can reach security clearance reviews infected by "retaliatory or discriminatory motive." Rattigan v. Holder, 689 F.3d 764, 771 (D.C. Cir. 2012); see also Chien v. Sullivan, 313 F. Supp. 3d 1, *13-14 (D.D.C. 2018) (permitting Title VII claim premised on allegation that plaintiff "received 'extra scrutiny' during her security-clearance update investigation in retaliation for her prior EEO activities"). Thus, to the extent that Counts III(b), IV(a), and IV(b) allege defendant failed to complete plaintiff's periodic security clearance review because plaintiff opposed discrimination, plaintiff has an adequate remedy in Title VII, meaning these counts are futile.

---

as evidence in this action." Letter from Jabari-Jason Tyson-Phipps, filed May 18, 2026 (Docket # 107) at 3.

Insofar as Counts III(b), IV(a), and IV(b) allege defendant failed to complete plaintiff's periodic security clearance review because plaintiff "blew the whistle" on wrongdoing, this allegation forms no part of plaintiff's Title VII retaliation claim: "Title VII does not protect employees from retaliation for opposing misbehavior of co-workers or supervisors that is unrelated to discrimination on account of one of the protected classes." Kamrowski v. Morrison Mgmt. Specialist, 2010 WL 3932354, at *20 (S.D.N.Y. Sept.29, 2010); see Jamil v. Sec'y, Dep't of Def., 910 F.2d 1203, 1207 (4th Cir. 1990) (claim that plaintiff's security clearance was revoked "for blowing the whistle on . . . mismanagement" did not lie under Title VII). Therefore, Title VII is not an adequate remedy for this alleged injury.

It may be that plaintiff can rely on the WPA to remedy this alleged injury. As a general rule, "Congress did not intend to provide for judicial review of security clearance decisions through the WPA." Campbell v. McCarthy, 952 F.3d 193, 205 (4th Cir. 2020). At the same time, a court "still possesses the authority to require an agency . . . to follow its own regulations in making a security clearance determination." Jamil, 910 F.2d at 1208; accord Zaid v. Exec. Off. of President, 815 F. Supp. 3d 113, 124-25 (D.D.C. 2025), appeal docketed, No. 26-5009 (D.C. Cir. Jan. 13, 2026). Regardless of whether plaintiff has an adequate remedy in the WPA's scheme, however, the APA may not be used to circumvent the Civil Service Reform Act (CSRA), of which the WPA is a component — "even when that scheme provides no judicial relief."[3]

[3] Plaintiff notes that, as a foreign service officer, he is subject to the Foreign Service Act. See Reply at 25. On this basis, he argues that the CSRA's "exclusivity doctrine" does not apply to him. Id. But he purports to bring a claim under the WPA, which is a component of the CSRA. In any event, "Congress stated that the Foreign Service Act is intended to be a companion measure to the CSRA," and like the CSRA, the Foreign Service Act "provide[s] the exclusive mode of redress." Thompson v. Pope, 397 F. Supp. 2d 28, 35 (D.D.C. 2005) (citations and internal quotation marks omitted); see Am. Foreign Serv. Ass'n v. Trump, 768 F. Supp. 3d 6, 25 (D.D.C. 2025) (APA and constitutional claims brought by members of the foreign service precluded by the CRSA and the Foreign Service Act).

Filebark, 555 F.3d at 1010; accord Sagar v. Mnuchin, 2019 WL 667201, at *1 (D.C. Cir. Jan. 29, 2019); Khaksari v. Tomlinson, 2009 WL 2407410, at *2 (D.D.C. Aug. 5, 2009). Thus, plaintiff's WPA claim fails.

Defendant asserts that Count IV(c) is also "premised on the alleged retaliation for failure to process [plaintiff's] security clearance" and therefore that plaintiff has an adequate remedy in Title VII. Opp. at 9 n.3. We read Count IV(c) to allege that defendant took a host of retaliatory actions against plaintiff — including, but not limited to, failing to complete his periodic security clearance review — in violation of the First Amendment, rendering them "contrary to constitutional right" under the APA. 5 U.S.C. § 706(2)(B); see Proposed TAC ¶¶ 174-76. In other words, Count IV(c) is about much more than the failure to complete his periodic security clearance review. This claim is futile for an independent reason, however. As raised by defendant and discussed below in section III.C.5, the proposed TAC's standalone claim under the First Amendment concerning defendant's allegedly retaliatory actions (Count VIII) fails. Plaintiff's theory as to why these actions are "contrary to constitutional right" thereby collapses.

Count IV(d) is similarly futile because the predicate constitutional violation is not well-pleaded. Count IV(d) alleges that defendant's decision to discipline plaintiff "for carrying a licensed personal handgun in a private hotel room in an open carry state," Proposed TAC ¶ 183, was in violation of the Second Amendment, rendering this decision "not in accordance with law" and "contrary to constitutional right" under the APA, 5 U.S.C. §§ 706(2)(A), (B). As we have previously explained to plaintiff, however, "just as a private employer engaged in security would obviously be justified in barring its employees from carrying their personal handguns on the job" without violating the Second Amendment, "so too may the Government here." Tyson-Phipps, 2024 WL 4128445, at *13. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1

(2022), cited to in the proposed TAC and in plaintiff's papers, has no application here. Defendant's decision to discipline plaintiff was merely "a restriction placed by the Government on one of its employees" — not, as in Bruen, an instance of "the Government exercising its power to regulate or license as a lawmaker." Tyson-Phipps, 2024 WL 4128445, at *13.

Count IV(e) is futile because plaintiff has an adequate remedy in Title VII. Count IV(e) alleges that defendant took a whole host of retaliatory actions against plaintiff in violation of the Fifth Amendment's equal protection component and thus the APA. See Proposed TAC ¶¶ 187-90. Because, as stated above, "Title VII is the exclusive remedy for employment discrimination by the Federal Government . . . Plaintiff's Fifth Amendment claim of denial of equal protection is subsumed within [his] Title VII claim." Dunn v. Sec'y of U.S., 2006 WL 1510097, at *8 (N.D.N.Y. May 26, 2006); accord Ercole v. LaHood, 2011 WL 1205137, at *14 (E.D.N.Y. Mar. 29, 2011), aff'd, 472 F. App'x 47 (2d Cir. 2012).

Defendant also asserts that Count IV(f) is "premised on the alleged retaliation for failure to process [plaintiff's] security clearance" and therefore that plaintiff has an adequate remedy in Title VII. Opp. at 9 n.3. This is not so. Count IV(f) alleges that "Defendant's evidence deletion orders, retaliatory responses to his refusal to falsify records, and demands for unpaid work violate the APA and the Follow the Rules Act," which is part of the WPA. Proposed TAC ¶ 197. Because these acts allegedly violate the WPA, plaintiff has an adequate remedy in the WPA's scheme (or at least a pathway under the WPA's scheme which he must follow). Count IV(f) is futile.

In sum, Counts III(a), III(b), IV(a), IV(b), IV(c), IV(d), IV(e) and IV(f) are futile.

4. Counts V-VII (Fifth Amendment)

Counts V-VII, which purport to bring claims under the Fifth Amendment, are futile insofar as they are predicated on the retaliatory acts which form the factual nucleus of plaintiff's Title VII retaliation claim. "Title VII is the exclusive remedy by which a federal employee can assert claims of race discrimination and retaliation arising from his . . . federal employment." Adeniji, 2020 WL 882166, at *1; see Ethnic Emps. of Libr. of Cong. v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (it is proper to "dismiss[] those constitutional claims that simply restated claims of racial, ethnic or other discrimination cognizable under Title VII, or claims of retaliation for the invocation of Title VII rights").

Likewise, Counts V-VII are futile insofar as they "assert[] employment-related claims based on conduct distinct from the discrimination and retaliation addressed by Title VII" — namely, retaliation for whistleblowing. Pretlow v. Garrison, 420 F. App'x 798, 801 (10th Cir. 2011). The CSRA, of which the WPA is a component, "established a comprehensive scheme for reviewing federal-personnel actions that preempts other federal and state claims complaining of prohibited employment practices and precludes claims asserted directly under the Constitution." Id.; see Dotson v. Griesa, 398 F.3d 156, 160 (2d Cir. 2005) ("Precisely because the CSRA reflects a detailed and comprehensive system for dealing with federal employment concerns, federal courts will generally not attempt to supplement the relief afforded by that statute through other actions."); see also Joseph v. Leavitt, 386 F. Supp. 2d 487, 493 (S.D.N.Y. 2005) (reading Dotson as holding that "the CSRA precludes a federal employee from pursuing judicial remedies for allegedly unconstitutional conduct that are not expressly provided by the statute, regardless of the type of remedy sought by the federal employee").

5. Count VIII (First Amendment)

We agree with defendant that, as in his original complaint, "plaintiff has not shown that there has been any constitutional violation" in Count VIII of the proposed TAC, which brings a First Amendment retaliation claim. Tyson-Phipps, 2024 WL 4128445, at *10. Plaintiff alleges in the proposed TAC that he "engaged in protected First Amendment activity by":

> (a) reporting discrimination, retaliation, and harassment internally and to OCR, EEOC, and the Foreign Service Grievance Board; (b) making whistleblower disclosures to the U.S. Attorney's Office for the Southern District of New York, the Office of Inspector General, and the Office of Special Counsel; (c) communicating with Congress and preparing filings in this Court; and (d) refusing to comply with orders he reasonably believed would violate law . . . .

Proposed TAC ¶ 229. "This speech addressed matters of public concern," plaintiff asserts. Id. ¶ 230. He then alleges that defendant retaliated against him for speaking. See id. ¶ 231.

As we have previously explained, a First Amendment retaliation claim requires that "the speech or conduct at issue was protected." Tyson-Phipps, 2024 WL 4128445, at *11 (quoting Heim v. Daniel, 81 F.4th 212, 221 (2d Cir. 2023)). A public employee's speech is not protected if it relates to a "personal interest" rather than "matters of public concern," id. (quoting Gotfryd v. City of Newburgh, 2024 WL 1555693, at *4 (S.D.N.Y. Apr. 10, 2024)), or if it is "pursuant to [his] official duties," id. at *12 (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).

Whether plaintiff spoke on matters of public concern, as he asserts, is "a question of law for the Court." Cole-Hatchard v. Tower-Bernstein, 2019 WL 6618290, at *1 (S.D.N.Y. Dec. 5, 2019).

Consistent with our previous finding, we find that plaintiff's "reporting discrimination, retaliation, and harassment" and "preparing filings in this Court," Proposed TAC ¶ 229, "did not address matters of public concern but instead related to plaintiff's treatment" by defendant, Tyson-Phipps, 2024 WL 4128445, at *11.

The proposed TAC does not state what plaintiff "communicat[ed] with Congress" about or in what manner, so it fails to plead that this speech addressed matters of public concern. Proposed TAC ¶ 229.

The "whistleblower disclosures to the U.S. Attorney's Office for the Southern District of New York, the Office of Inspector General, and the Office of Special Counsel," Proposed TAC ¶ 229, may well have addressed matters of public concern. But these disclosures are nevertheless not protected under the First Amendment. Plaintiff allegedly disclosed "that he had been ordered to alter investigative reports and add false notations to subjects' files to state that they had committed fraud . . . and to present these false statements to federal courts and U.S. Attorneys' Offices." Id. ¶ 31. The Court has already found that plaintiff's disclosure of "improper conduct by his superiors" to the U.S. Attorney's Office for the Southern District of New York was part of his official duties. See Tyson-Phipps, 2024 WL 4128445, at *12. We have no trouble finding now that the same disclosures to the Office of Inspector General and the Office of Special Counsel were part of his official duties. These disclosures were part of his official duties because they were "'part-and-parcel of his concerns' about his ability to 'properly execute his duties.'" Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196, 203 (2d Cir. 2010) (quoting Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007)); accord Matthews v. Lynch, 483 F. App'x 624, 626 (2d Cir. 2012) (law enforcement officer's disclosure of misconduct to "outside agencies" was "'part and parcel' of his ability to properly execute his duties — i.e., enforce the law"). Plaintiff's disclosures "reflected [his] special knowledge . . . gained as a result of plaintiff['s] position" as a Diplomatic Security Special Agent, Carter v. Inc. Vill. of Ocean Beach, 693 F. Supp. 2d 203, 211 (E.D.N.Y. 2010), aff'd, 415 F. App'x 290 (2d Cir. 2011), and thus "owe[] [their] existence to a public employee's

professional responsibilities," Garcetti, 547 U.S. at 421. Therefore, they are not protected under the First Amendment.

Plaintiff cites to Lane v. Franks, 573 U.S. 228 (2014), but it is inapposite. "The plaintiff in Lane provided sworn testimony in open court, compelled by subpoena, at a criminal proceeding against a corrupt government official." Moriates v. City of New York, 2016 WL 3566656, at *5 (E.D.N.Y. June 24, 2016). "Nothing of the sort is, or, the record suggests, could be, pled here." Id.

Finally, we doubt that plaintiff's "refusing to comply with orders he reasonably believed would violate law," Proposed TAC ¶ 229, constitutes speech at all, see Schoolcraft v. City of New York, 2012 WL 3960118, at *10 (S.D.N.Y. Sept. 10, 2012) (law enforcement officer's "refusal to make an arrest or issue a summons" not protected speech because objective observer might not "understand Plaintiff's conduct as an expression of his disagreement"). Even if it were speech, the proposed TAC shows that it was pursuant to plaintiff's official duties. In O'Connell v. Marrero-Recio, 724 F.3d 117 (1st Cir. 2013), the First Circuit confronted the question of whether a public employee's "refusal to go along with [her supervisors'] alleged illegal orders" was protected for purposes of a First Amendment retaliation claim. Id. at 124. O'Connell observed that the employee's "'speech' solely focused on events at her workplace and was made exclusively to fulfill her responsibilities." Id. at 123. The same is true of plaintiff's "speech." As O'Connell held, "This type of communication is the quintessential example of speech that owes its existence to a public employee's professional responsibilities and thus is not protected under the First Amendment." Id. (citing Garcetti, 547 U.S. at 421-22).

Even if we found that the proposed TAC pleaded an underlying First Amendment violation, Count VIII is futile because plaintiff's retaliation claim is precluded by Title VII and the CSRA. See Joseph, 386 F. Supp. 2d at 492, 492 n.9.

6. Count IX (FOIA)

Defendant argues that Count IX, the FOIA claim in the proposed TAC, is futile because it is brought against the Secretary of State, not the Department of State. See Opp. at 15. We agree. "FOIA authorizes claims against federal agencies, not individuals." Williams v. McCausland, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992). Plaintiff answers that "nam[ing] the Secretary in his official capacity . . . is the correct method of asserting a FOIA claim against the State Department." Reply at 29. He offers no citation for this proposition, which flies in the face of case law. See, e.g., Drake v. Obama, 664 F.3d 774, 785 (9th Cir. 2011) (upholding dismissal of FOIA claim against the Secretary of State and others, as "FOIA does not apply to any of the Defendants because they are all individuals, not agencies"). Count IX is futile on this basis alone.

We would deny leave to amend with respect to Count IX anyway since any failure to produce documents under FOIA has nothing to do with the actions of the individuals who engaged in the conduct that underly the claims in the permitted count of this lawsuit. Nothing prevents plaintiff from filing a separate lawsuit as to his FOIA claim.

7. Count X (Ultra Vires)

Defendant argues that Count X, the ultra vires claim in the proposed TAC, is futile because plaintiff "has alternate procedures for review" available to him. Opp. at 16. We agree. As ably explained in Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt., 777 F. Supp. 3d 253 (S.D.N.Y. 2025):

> The ultra vires right of action is a "nonstatutory" form of judicial review that derives from the inherent equitable powers of courts. Fed. Express Corp. v. U.S. Dep't of Com., 39 F.4th 756, 765 (D.C. Cir. 2022). This doctrine is available when agency action is a clear departure from a statutory mandate or blatantly lawless. Id. at 764. Ultra vires claims are based on the premise that "if an agency action is unauthorized by the statute under which the agency assumes to act, the agency has violated the law and the courts generally have jurisdiction to grant relief." Id. at 763 (citation omitted). Ultra vires claims are only available in the "extremely limited" circumstance where three requirements are met: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." Yale New Haven Hosp. v. Becerra, 56 F.4th 9, 26-27 (2d Cir. 2022) (quoting DCH Reg'l Med. Ctr. v. Azar, 925 F.3d 503, 509 (D.C. Cir. 2019)).

Id. at 282. "To satisfy the second requirement, plaintiff[] must show that [he] ha[s] been 'wholly deprived of a meaningful and adequate means of vindicating [his] alleged statutory rights.'" Id. (quoting Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1264-65 (D.C. Cir. 2006)). The proposed TAC does not provide any allegations that make this showing. Thus, there is no reason to conclude that Title VII and the WPA do not provide a meaningful and adequate means of vindicating the rights that are asserted to have been violated.

8. Count XI (Declaratory Judgment)

Defendant rightly notes that "a request for a declaratory judgment is not a cause of action, rather a type of relief." Opp. at 15 n.4. "The [Declaratory Judgment Act] only provides courts with discretion to fashion a remedy, not a cause of action." Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., 116 F.4th 106, 113-14 (2d Cir. 2024). Accordingly, Count IX is futile.

9. Count XII (Mandamus)

Count XII seeks a writ of mandamus compelling defendant to:

> (a) process and confer his administrative promotion to FS-4 retroactive to April 2019 with full back pay, benefits, and time-in-class credit; (b) complete his

> security-clearance reinvestigation and issue a final eligibility determination within a specified deadline; (c) restore withheld LEAP, locality pay, and improperly deducted annual leave; and (d) take such other actions as are necessary to fulfill its clear, nondiscretionary duties . . . .

Proposed TAC ¶ 263.

> There are three conditions that must be established before a writ of mandamus may issue . . . : (1) "the party seeking issuance of the writ must have no other adequate means to attain the relief [it] desires"; (2) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner must demonstrate that the "right to issuance of the writ is clear and indisputable."

In re The City of New York, 607 F.3d 923, 932-33 (2d Cir. 2010) (quoting Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380-81 (2004)).

We agree with defendant that plaintiff has adequate means to attain the relief he desires through his Title VII and WPA claims. See Ellis v. Naval Air Rework Facility, Alameda, Cal., 404 F. Supp. 377, 380-81 (N.D. Cal. 1975) ("Plaintiffs in these actions do have an adequate remedy in Title VII, and mandamus is, therefore, inappropriate. Under Title VII plaintiffs may seek reinstatement, promotion, back pay, and injunctive relief for redress of the discrimination complaints they have raised or attempted to raise administratively.") Count XII is futile.

10. Count XIII (Title VIII Hostile Work Environment)

In Count XIII, plaintiff attempts to revive the Title VII hostile work environment claim presented in his original complaint. We recommended dismissal of that claim because it was founded on conclusory allegations and duplicative of his Title VII retaliation claim. See Tyson-Phipps, 2024 WL 4128445, at *7-8. Defendant argues that Count XIII is futile for the same reasons. We agree. In large part, Count XIII is grounded in the same factual allegations as the

original complaint.[4] We previously determined that these factual allegations did not demonstrate that "that discriminatory incidents were 'sufficiently continuous and concerted to have altered the conditions of the employee's working environment." Id. at *7 (quoting Banks v. Gen. Motors, LLC, 81 F.4th 242, 267 (2d Cir. 2023) (internal quotation marks omitted). And it remains true that there is "no need to add a hostile work environment claim" based on allegations that plaintiff "was repeatedly retaliated against." Id. at *8 (quoting Williams v. Metro-N. Commuter R. Co., 2012 WL 2367049, at *14 (S.D.N.Y. June 20, 2012)) (internal quotation marks omitted).

Count XIII is futile.

11. Count XIV (Privacy Act)

As defendant points out, the Privacy Act, like FOIA, "authorizes suits only against 'agencies' and not individuals." Williams, 791 F. Supp. at 1000 (citing 5 U.S.C. § 552a(g)(1)). Count XIV is futile for this reason. See Mandel v. U.S. Off. of Pers. Mgmt., 244 F. Supp. 2d 146, 153 (E.D.N.Y.) ("Courts have held that individual officers are not proper parties to a Privacy Act action," and "claims against [them] must be dismissed."), aff'd, 79 F. App'x 479 (2d Cir. 2003).

* * *

[4] Plaintiff makes new allegations pertinent to a hostile work environment claim in the proposed TAC, including allegations concerning the so-called Oman incident, "where management mocked Plaintiff for briefly wearing local clothing after his bags were lost, covertly took and circulated photos, and later attempted to manufacture an allegation that he had offended Omani officials." Proposed TAC ¶ 106. But these allegations still do not suffice to establish a sufficiently continuous and concerted course of discriminatory conduct on defendant's part.

Because defendant has not shown that Count I of the proposed TAC is futile, plaintiff's motion for leave to amend (Docket # 93) is granted with respect to this claim. It is denied as to all other claims.

"[T]he liberality with which a court grants leave to amend does not impart to litigants the privilege of re-shaping their legal theories endlessly." Sanders v. Thrall Car Mfg. Co., 582 F. Supp. 945, 953 (S.D.N.Y. 1983), aff'd, 730 F.2d 910 (2d Cir. 1984); accord Pub. Emps. Ret. Ass'n of New Mexico v. PricewaterhouseCoopers LLP, 305 F. App'x 742, 745 (2d Cir. 2009) ("While the district court should 'freely give leave' to amend, this is not carte blanche for a plaintiff to continually amend its pleadings.") (quoting Fed. R. Civ. P. 15(a)(2)). "Simply put, 'a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.'" Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 257-58 (2d Cir. 2018) (quoting State Trading Corp. of India v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990)). In light of these principles, and given the need to advance this litigation, the Court will not permit any further amendments to plaintiff's complaint.

CONCLUSION

Plaintiff's motion for leave to amend (Docket # 93) is granted in part and denied in part, as set forth above. If plaintiff wishes to file an amended complaint consistent with this Opinion and Order, he shall do so within 14 days. Defendant shall respond to any newly-filed amended complaint within 21 days thereafter. The parties are directed to consult with each other and provide either an agreed-upon proposed discovery schedule or separate proposed discovery schedules on or before the date defendant's response is due.

SO ORDERED.

Dated: August 31, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge